**THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE, CHATTANOOGA DIVISION**

Miller Industries Towing Equipment Inc.

     Plaintiff,

     v.

NRC Industries

     Defendant.

Case No.: 1:19-cv-00095-PLR-SKL

Hon. Pamela L. Reeves

**DEFENDANT NRC INDUSTRIES' BRIEF IN SUPPORT OF ITS
RULE 12(b)(2) and 12(b)(6) MOTIONS TO DISMISS**

# TABLE OF CONTENTS

STATEMENT OF FACTS .............................................................................................. 1

    A.     The Parties ..................................................................................................... 1

    B.     Miller's Complaint......................................................................................... 2

    C.     The Asserted Patents ..................................................................................... 2

        1.     The '577 Patent ................................................................................. 2

        2.     The D'963 Patent ............................................................................. 4

        3.     The D'492 Patent ............................................................................. 5

    D.     Miller's Patents Do Not Cover NRC's Products ........................................... 6

ARGUMENT ............................................................................................................... 8

I.     MILLER'S CLAIMS MUST BE DISMISSED BECAUSE THIS COURT LACKS
PERSONAL JURISDICTION OVER NRC....................................................... 8

    A.     Miller Fails to Allege Facts Sufficient to Demonstrate that NRC is Subject
to General Jurisdiction in Tennessee ........................................................ 10

    B.     Miller Fails to Allege Facts Sufficient to Demonstrate that NRC is Subject
to Specific Jurisdiction in Tennessee........................................................ 11

        1.     Miller fails to establish that NRC purposefully directed any relevant
activities at the forum state ...................................................... 12

        2.     Exercising personal jurisdiction over NRC would not be fair or
reasonable ............................................................................... 12

II.     MILLER'S CLAIMS MUST BE DISMISSED BECAUSE THEY FAIL TO
STATE A CLAIM OF INFRINGEMENT ...................................................... 14

    A.     Miller Fails to Plausibly Allege Infringement of U.S. Patent No. 9,440,577 ....... 15

        1.     Miller fails to plausibly allege that the accused product practices
each of the limitations found in claim 1................................... 15

        2.     Miller fails to plausibly allege that the accused product practices
each of the limitations found in claim 16................................. 16

        3.     Miller fails to plausibly allege that the accused product practices
each of the limitations found in dependent claims 2-3, 6-8, 11, 13,
17, 20 and 21 .......................................................................... 17

i

B.  Miller Failed to Plausibly Allege Infringement of the Asserted Design Patents .. 17

    1.  Miller has not plausibly alleged infringement of the D'963 patent .......... 20

    2.  Miller has not plausibly alleged infringement of the D'492 patent .......... 23

CONCLUSION .................................................................................................................... 24

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Kimberly-Clark Corp.*,
570 Fed. Appx. 927 (Fed. Cir. 2014) ................................................................. 18, 19, 20

*Arminak & Assocs. v. Saint-Gobain Calmar, Inc.*,
501 F.3d 1314 (Fed. Cir. 2007) ................................................................................ 18

*Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*,
480 U.S. 102 (1987) .................................................................................................... 13

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*,
566 F.3d 1012 (Fed. Cir. 2009) ................................................................................ 11

*Avocent Huntsville Corp. v. Aten Int'l Co.*,
552 F.3d 1324 (Fed. Cir. 2008) ............................................................................ 9, 10

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .................................................................................................... 15

*Bennett Regulator Guards, Inc. v. MRC Global, Inc.*,
No. 4:12-cv-1040, 2013 U.S. Dist. LEXIS 93553 (N.D. Ohio July 3, 2013) ........................... 11

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) .................................................................................................... 13

*Colida v. Nokia, Inc.*,
347 Fed. Appx. 568 (Fed. Appx. 2009) .................................................................... 19

*Cotapaxi Custom Design & Mfg., LLC v. Corporate Edge, Inc.*,
No. 06-5183, 2007 U.S. Dist. LEXIS 73172 (D.N.J. Sept. 28, 2007), *aff'd* 284 Fed. Appx. 809
(Fed. Cir. 2008) .......................................................................................................... 19

*Crocs, Inc. v. ITC*,
598 F.3d 1294 (Fed. Cir. 2010) ................................................................................ 18

*Daimler AG v. Bauman*,
134 S. Ct. 746 (2014) ............................................................................................ 10, 11

*Dochnal v. Thomson Reuters Co.*,
No. 2:18-cv-00044, 2018 U.S. Dist. LEXIS 178458 (E.D. Tenn. Oct. 17, 2018) ............. 13, 14

*e.Digital Corp. v. iBaby Labs, Inc.*,
No. 15-cv-05790, 2016 U.S. Dist. LEXIS 111689 (N.D. Cal. Aug. 22, 2016) ....................... 15

Case 1:19-cv-00095-PLR-SKL   Document 34   Filed 05/20/19   Page 4 of 31   PageID #: 154

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
    543 F.3d 665 (Fed. Cir. 2008) ................................................................. 18, 19

*Filter Plus, Inc. v. O R Co. & Surgical Principals*,
    No. 16-12974, 2017 U.S. Dist. LEXIS 26792 (E.D. Mich. Feb. 27, 2017) ............................ 15

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    131 S. Ct. 2846 (2011) ....................................................................... 10

*Grober v. Mako Prods., Inc.*,
    686 F.3d 1335 (Fed. Cir. 2012) ................................................................ 12

*Hartco Engg, Inc. v. Wang's Int'l, In.*,
    142 Fed. Appx. 455 (Fed. Cir. 2005) ........................................................... 17

*Helicopteros Nacionales De Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984) .......................................................................... 11

*In re Mann*,
    861 F.2d 1581 (Fed. Cir. 1988) ................................................................ 17

*Int'l Shoe v. Washington*,
    326 U.S. 310 (1945) ........................................................................... 9

*Iowa State Univ. Research Found., Inc. v. Greater Continents, Inc.*,
    81 Fed. Appx. 344 (Fed. Cir. 2003) ............................................................. 9

*Kyowa Hakka Bio, Co. Ltd. v. Ajinomoto Co.*,
    No. 17-313, 2018 U.S. Dist. LEXIS 22392 (D. Del. Feb. 12, 2018) ................................. 17

*LSI Indus. v. Hubbell Lighting, Inc.*,
    232 F.3d 1369 (Fed. Cir. 2000) ................................................................ 10

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009) ................................................................ 17

*Maxchief Invs., Ltd. v. Wok & Pan, Indus., Inc.*,
    No. 2:15-cv-153, 2017 U.S. Dist. LEXIS 215440 (E.D. Tenn. Sept. 29, 2017) ...................... 9

*Medical Solutions, Inc. v. C Change Surgical LLC*,
    541 F.3d 1136 (Fed. Cir. 2008) ................................................................. 8

*Mezibov v. Allen*,
    411 F.3d 712 (6th Cir. 2005) .................................................................. 15

*Monkton Ins. Servs. v. Ritter*,
    768 F.3d 429 (5th Cir. 2014) .............................................................. 10, 11

iv

*NexLearn v. Allen Interactions, Inc.*,
859 F.3d 1371 (Fed. Cir. 2017) ........................................................................ 12

*North Star Innovations, Inc. v. Micron Tech., Inc.*,
No. 17-506-LPS-CJB, 2017 U.S. Dist. LEXIS 189624 (D. Del. Nov. 16, 2017) ................... 15

*OurPet's Co. v. Iris USA, Inc.*,
No. 1:34-cv-1642, 2015 U.S. Dist. LEXIS 185150 (N.D. Ohio Mar. 23, 2015)............... 18, 19

*Pepitone v. American Standard*,
No. 92-1284, 1992 U.S. App. LEXIS 30867 (Fed. Cir. 1992) ................................. 19

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*,
148 F.3d 1355 (Fed. Cir. 1998) .......................................................................... 8

*Snider v. Stediley & Neal, PLLC*,
No. 1:12-cv-423, 2013 U.S. Dist. LEXIS 76640 (E.D. Tenn. May 31, 2013) ................. 13, 14

*Sport Dimension, Inc. v. Coleman, Co.*,
820 F.3d 1316 (Fed. Cir. 2016) ................................................................... 22, 24

*Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De. Equip. Medico*,
563 F.3d 1285 (Fed. Cir. 2009) ........................................................................ 13

*Watkins v. Kajima Int'l Corp.*,
No. 3:08-0426, 2010 U.S. Dist. LEXIS 91432 (M.D. Tenn. Sept. 1, 2010)...................... 11, 12

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980)........................................................................................ 9

**Statutes**

35 U.S.C. § 285........................................................................................ 24

Tenn. Code Ann. § 20-2-225 (2019).......................................................... 9

**Rules**

Fed. R. Civ. P. 12(b)(2).......................................................................... 1, 24

Fed. R. Civ. P. 12(b)(6)................................................................... 1, 14, 19, 24

v

NRC Industries ("NRC") submits this memorandum in support of its Rule 12(b)(2) and Rule 12(b)(6) Motions to Dismiss for lack of personal jurisdiction and failure to state a claim upon which relief can be granted. NRC is not subject to general jurisdiction in Tennessee and lacks any purposeful contacts with Tennessee related to this action. Accordingly, this Court lacks a Constitutional basis for asserting jurisdiction over NRC. Additionally, Miller Industries Towing Equipment Inc. ("Miller") has failed to state a claim of infringement upon which relief can be granted. For these reasons, this Court should dismiss the action.

## STATEMENT OF FACTS

### A.    The Parties

Miller is a world-wide seller of towing and recovery equipment. Dkt. 24 at ⁋ 2. It manufactures and sells a large line of equipment, including towing recovery units ("wreckers"). *Id*. Miller is incorporated in Delaware and has its principal place of business in Tennessee.

NRC is a Canadian corporation that manufactures and sells wreckers, carriers, and other towing and recovery equipment. Declaration of Stéphane Pigeon dated May 17, 2019 ("Pigeon Decl.") ⁋ 2. It does not have any property or employees located in Tennessee. *Id*. at ⁋⁋ 3-4. All of NRC's direct sales occur in the Province of Québec, Canada. *Id*. at ⁋ 2. NRC makes indirect sales through its dealers in the United States, but has never sold, either directly or indirectly, any products bearing the accused wrecker controls into the State of Tennessee. *Id*. at ⁋ 5. No employee of NRC has attended any trade shows or otherwise engaged in marketing efforts inside Tennessee since NRC began marketing the accused wrecker controls in November, 2017. *Id*. at ⁋ 7. NRC is not registered to do business in Tennessee, and does not have any agents for service of process in Tennessee. *Id*. at ⁋ 6.

1

### B.    Miller's Complaint

Miller's complaint alleges infringement of one utility patent, U.S. Patent No. 9,440,577 ("'577 patent") (Ex. 1), and two design patents, D751,963 ("the D'963 patent") (Ex. 2) and D752,492 ("the D'492 patent") (Ex. 3) against NRC.  Miller alleges that NRC manufactures and offers to sell wreckers containing an interior compartment that stores the wrecker controls covered by these design and utility patents.

### C.    The Asserted Patents

#### 1.    The '577 Patent

The '577 patent is titled "Vehicle Wrecker With Improved Controls."  (Ex. 1.)  It is directed to a wrecker-type recovery vehicle with "wrecker controls that are more easily accessible, as well as more ergonomically and visually appealing."  *Id.* at col. 1:45-47.  The specification discloses only two embodiments: (1) a control panel that is fixed to a hinged door to the compartment, such that when the door is opened the control panel flips out (e.g., *id.* at col. 4:13-16); and (2) a control panel fixed to a slidable shelf with a separate vertically-moving door (e.g. *id.* at col. 5:1-4).  Drawings of these embodiments are provided in the '577 patent as Figures 4 and 3A, respectively:



Miller only alleges infringement of the claims directed to the first embodiment shown in Figure

4. Dkt. 24 at ¶¶ 12-25.

The '577 patent contains 22 claims. In the Complaint, Miller asserts claims 1-3, 6-8, 11,

13, 16, 17, 20, and 21. Of these, claims 1 and 16 are independent. Claim 1 reads as follows:

> 1. A wrecker-type recovery vehicle for recovering other, disabled vehicles, comprising:
>
>> a vehicle frame extending along a longitudinal axis, the vehicle frame supporting a vehicle body and carrying an extensible and retractable boom; and
>>
>> manually-manipulable wrecker controls located on and supported by a control panel stored within an interior compartment of the wrecker supported by the vehicle body, the wrecker controls configured to control movement of one or more wrecker components useful in vehicle recovery, wherein the control panel has a base end and a distal end opposite the base end; and
>>
>> the control panel moveable from a first, storage position within the interior compartment of the vehicle body, ***wherein the control panel in the first position is operable to close off the interior compartment*** from an operator of the wrecker controls, to a second, operable position displaced from and outside the compartment and remote from the vehicle exterior, in a direction perpendicular to the longitudinal axis, wherein the control panel in the second position provides an open interior compartment in which the wrecker controls are located in a position where they may be manipulated by the operator, and wherein in the second position the control panel is downwardly-angled relative to ground such that the distal end is located remote from the vehicle body and below a horizontal axis parallel to ground and intersecting the base end, and wherein the control panel remains supported by the vehicle body while in the second position, whereby the displacement of the control panel to the second position comprises a strategic location of the wrecker controls, providing an operator with an ergonomically-enhanced work surface.

(emphasis added). Claim 16 (with emphasis added) reads:

> 16. A method for controlling a wrecker-type recovery vehicle for recovering other, disabled vehicles, comprising the steps of:
>
>> providing a wrecker vehicle frame extending along a longitudinal axis, the vehicle frame including a vehicle body with side surfaces, and the vehicle frame carrying an extensible and retractable boom; and
>>
>> providing manually-manipulable wrecker controls located on and supported by a control panel, the control panel supported by the vehicle body and stored within an interior compartment of the vehicle body, ***the control panel comprising an outwardly-opening door*** associated with the interior compartment accessible from an exterior of the

3

vehicle, and *wherein when the door is closed a closed interior compartment is provided*, and when the door is open this exposes the wrecker controls to operator manipulation;

wherein when the control panel door is opened, the control panel is moveable from a first, storage position within the interior compartment inside the vehicle exterior, to a second, operable position in which the control panel is displaced from and outside the interior compartment and the vehicle exterior, in a direction perpendicular to the longitudinal axis, wherein the control panel remains supported by the vehicle body while in the second position;

whereby the wrecker controls can be manipulated when in the second position, such that an operator in a standing position adjacent the vehicle body and working the wrecker controls when the control panel is in the second position, has substantially expanded sightlines as opposed to when the operator is in a standing position working the wrecker controls when the control panel is in the first position, and wherein the displacement of the control panel to the second position comprises a strategic location of the wrecker controls, providing an operator with an ergonomically-enhanced work surface.

The asserted dependent claims require additional elements. For example, claim 3 adds an additional requirement that the "control panel comprises an outwardly-opening door associated with a compartment accessible from an exterior of the vehicle, and wherein the door can be closed to form a closed compartment." This claim element is consistent with the embodiment show in Figure 4 of the '577 patent above.

The '577 patent also contains a claim, such as claim 4 (which depends from claim 1) and independent claim 22 that require the control panel to comprise "an outwardly sliding shelf." Miller does not assert the claims directed to this sliding-shelf embodiment in the Complaint.

## 2. The D'963 Patent

The two remaining patents are design patents. The D'963 patent is titled "Compartment and Console with Controls for a Recovery Vehicle". (Ex. 2.) The claim is directed to the design of the (1) compartment and (2) controls of a wrecker recovery vehicle. A representative figure of the claimed design is shown below:

4



Fig. 2

In the claimed design the entire control panel is affixed to the door. The control panel is a single, unitary body, that is movable to a second position that is outside of the compartment. A housing surrounds the control panel, which serves to define its shape. The control panel also has is a distinct U-shaped, open portion in the center.

On the control panel itself, the monitor has buttons located on both sides of the screen, and the monitor can be moved to a second exterior position. There are two joysticks on both sides of four paddles with an emergency stop to the upper left, and four push buttons on the housing above the paddle controls.

### 3. The D'492 Patent

The D'492 patent is titled "Console with Recovery Vehicle Controls." (Ex. ). The claim is directed to the design of a control panel of a wrecker recovery vehicle. A representative figure of the claimed design is shown below:

5

**Fig. 3**



The claimed design is similar in many respects to the design claimed in the '963 patent. The control panel is a single, unitary body. A housing surrounds the control panel, which serves to define its shape. There is a distinct U-shaped, open portion in the center of the control panel. The monitor has buttons located on both sides of the screen and can be moved to a second, exterior position. There are two joysticks on both sides of four paddles with an emergency stop to the upper left, and four push buttons on the housing above the paddle controls.

### D.  Miller's Patents Do Not Cover NRC's Products

There are clear differences between NRC's wrecker control panel and the asserted claims of the utility and design patents. With respect to the asserted claims of the '577 patent, NRC's design does not include a control panel that closes off the interior compartment.[1]

---

[1] NRC has provided two pictures of the accused device that are clearer and easier to decipher than the pictures included with Miller's Complaint. NRC is also submitting a video exhibit of the device being operated. NRC submits that these exhibits are helpful, but need not be relied upon for purposes of deciding the instant motion.

6



(*see* Pigeon Decl. Ex. A; Dkt. 24-1; Dkt. 24-2 at 6.)  Instead, the control panel is much smaller

than the opening into the compartment.  With the control panel in a first "storage" position, the

compartment remains fully open and accessible.

  In addition, while there is a door to the compartment in the accused device it is not part of

the control panel.  As shown in the above pictures of the NRC product, the door and the control

7

panel are separate and discrete parts.  Only a portion of the control panel can be extended outside

of the compartment, and when that portion of the control panel is extended to the second,

"operating" position, it prevents the door from closing.  This can be seen in the video attached as

Exhibit B to the Declaration of Stéphane Pigeon.  The need to separately return the control panel

further demonstrates that the control panel and door are separate and discrete components.

The design patent claims of the '963 and '492 patents also bear no resemblance to NRC's

product.  With respect to the '963 patent, the claimed design shows that the entire control panel

is affixed to a door (as required by claims 3 and 16 of the utility patent).  No portion of NRC's

control panel is affixed to a door.  Both claimed designs are directed to single, unitary control

panel with a decorative housing squaring off the rear and side profiles of the panel, whereas

NRC's product is two completely separate components containing controls lacking a housing

comparable to that shown in the design patent.  There are many other differences between the

claimed designs and NRC's product, some of which are discussed in more detail below.

## ARGUMENT

## I.  MILLER'S CLAIMS MUST BE DISMISSED BECAUSE THIS COURT LACKS PERSONAL JURISDICTION OVER NRC

Because this is a patent infringement case, the Court must apply the law of the Federal

Circuit to determine personal jurisdiction.  *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*,

148 F.3d 1355, 1358 (Fed. Cir. 1998).  "Whether or not a district court has personal jurisdiction

over a party is a question of law."  *Medical Solutions, Inc. v. C Change Surgical LLC*, 541 F.3d

1136, 1139 (Fed. Cir. 2008).  "When personal jurisdiction is challenged . . . the Plaintiff has the

8

burden of showing that jurisdiction exists." *Iowa State Univ. Research Found., Inc. v. Greater Continents, Inc.*, 81 Fed. Appx. 344, 349 (Fed. Cir. 2003) (citation omitted).

"Determining whether personal jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process, and whether the assertion of personal jurisdiction would violate due process." *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1329 (Fed. Cir. 2008) (citation omitted). Because Tennessee's long-arm statute "extends personal jurisdiction to the fullest extent permitted by the Due Process clause . . . the personal jurisdiction analysis in this case narrows to one inquiry: whether jurisdiction comports with due process." *Maxchief Invs., Ltd. v. Wok & Pan, Indus., Inc.*, No. 2:15-cv-153, 2017 U.S. Dist. LEXIS 215440, at *7 (E.D. Tenn. Sept. 29, 2017) (internal citations omitted); Tenn. Code Ann. § 20-2-225 (2019).

Due process requires that a defendant "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945) (internal citations omitted). The Due Process Clause precludes the exercise of jurisdiction unless a party's contacts with the forum are such that she "should reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Miller fails to allege facts sufficient to demonstrate that NRC has "minimum contacts" within the state of Tennessee, such that exercising personal jurisdiction would not "offend traditional notions of fair play and substantial justice." Because NRC is not subject to personal jurisdiction in Tennessee, the Court should grant NRC's motion to dismiss.

9

## A. Miller Fails to Allege Facts Sufficient to Demonstrate that NRC is Subject to General Jurisdiction in Tennessee

NRC resides in Canada, not in Tennessee, and this Court lacks general jurisdiction over it. "[I]n the context of patent infringement litigation . . . general jurisdiction requires that the defendant have 'continuous and systematic' contacts with the forum state," and such contacts will "confer[] [general] personal jurisdiction even when the cause of action has no relationship with those contacts." *Avocent Huntsville Corp.*, 552 F.3d at 1331-32 (internal citations omitted) (alteration in original). "Neither the United States Supreme Court nor [the Federal Circuit] has outlined a specific test to follow when analyzing whether a defendant's activities within a state are 'continuous and systematic.'" *LSI Indus. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000). As a result, a court will look at the facts of each case to make such a determination. *Id.*

"With respect to a corporation, the place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction." *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (internal citations omitted) (alterations in original). A corporate entity will not be subject to general jurisdiction unless that entity's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (citation omitted); *see also Monkton Ins. Servs. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (noting that it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business").

As a threshold matter, Miller's general jurisdiction argument with regard to continuous and systematic contacts is entirely conclusory and pleaded on "information and belief." Dkt. 24 at ¶¶ 6-8. Miller's pleading is supported by no underlying facts, and the claim should fail for this

10

reason alone.  *See, e.g.*, *Watkins v. Kajima Int'l Corp.*, No. 3:08-0426, 2010 U.S. Dist. LEXIS 91432, at *7 (M.D. Tenn. Sept. 1, 2010); *Bennett Regulator Guards, Inc. v. MRC Global, Inc.*, No. 4:12-cv-1040, 2013 U.S. Dist. LEXIS 93553, at *8 (N.D. Ohio July 3, 2013).  The simple fact is that Miller cannot plead sufficient facts to establish continuous and systematic contacts because NRC does not conduct any business in Tennessee.  Pigeon Decl. ¶¶ 3-8.

Further, Miller pleads no facts sufficient to render NRC "at home" in Tennessee.  *See Daimler*, 134 S. Ct. at 760.  The bar for establishing that a defendant is "at home" in the forum state is quite high.  For example, in *Helicopteros Nacionales De Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984), the Supreme Court rejected the plaintiff's assertion of personal jurisdiction in Texas where the defendant did not have a place of business in Texas and had never been licensed to do business in the state.  *Id.*; *see also Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017-18 (Fed. Cir. 2009).

Here, NRC is a Canadian company that is not registered or licensed in Tennessee, has no place of business, property, or employees in Tennessee, and does not conduct business in Tennessee.  Pigeon Decl. ¶¶ 2-8.  In other words, this case does not even involve "sporadic and insubstantial contacts [if any] with the forum state, which are not sufficient to establish general jurisdiction over the defendants in the forum."  *Autogenomics*, 566 F.3d at 1017; *Monkton*, 768 F.3d at 432.  Therefore, this Court does not have general jurisdiction over NRC.

**B.**     **Miller Fails to Allege Facts Sufficient to Demonstrate that NRC is Subject to Specific Jurisdiction in Tennessee**

NRC also lacks sufficient minimum contacts with the forum state to support the assertion of specific jurisdiction.  To assess specific jurisdiction, the Federal Circuit uses a three-prong test that inquires whether (1) the defendant purposefully directed its activities at residents of the forum state, (2) the claim arises out of or relates to the defendant's activities with the forum

11

state, and (3) assertion of personal jurisdiction is reasonable and fair. *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1346 (Fed. Cir. 2012). "The plaintiff has the burden of proving parts one and two of the test, and then the burden shifts to the defendant to prove that personal jurisdiction is unreasonable." *Id*.

### 1. Miller fails to establish that NRC purposefully directed any relevant activities at the forum state

Once again, Miller's specific jurisdiction argument is entirely conclusory and pleaded on "information and belief." As with general jurisdiction, mere "bare-bones allegation[s]" cannot establish specific jurisdiction. *See, e.g.*, *Watkins*, 2010 U.S. Dist. LEXIS 91432, at *7. Even taken as true, Miller's allegation that NRC "advertises and promotes its Accused Products in national publications within the industry," Dkt. 24 at ⁋ 6, is not enough to establish personal jurisdiction. Advertisements that are nationally distributed and not specifically directed to the forum state cannot show purposeful direction. *See, e.g.*, *NexLearn v. Allen Interactions, Inc.*, 859 F.3d 1371, 1379-80 (Fed. Cir. 2017). Miller provides no evidence that NRC specifically targeted its advertising and promotion efforts in Tennessee. NRC has not attended trade shows or otherwise marketed in Tennessee since it began selling the accused wrecker controls in November 2017. Pigeon Decl. ⁋ 7. Nor has NRC made, used, sold, or offered to sell a single accused product in Tennessee. NRC lacks any relevant contacts.

### 2. Exercising personal jurisdiction over NRC would not be fair or reasonable

Not only does NRC lack relevant, purposeful contacts with the forum, it would also be unfair and unreasonable to assert jurisdiction over NRC. In evaluating whether asserting personal jurisdiction over the defendant is fair or reasonable, the courts may evaluate: (1) "the burden on the defendant," (2) "the forum state's interest in adjudicating the dispute," (3) "the

12

plaintiff's interest in obtaining convenient and effective relief," (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and (5) "the shared interest of the several states in furthering fundamental substantive social policies." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985).

First, subjecting NRC to jurisdiction in the Eastern District of Tennessee would impose a significant burden on NRC. Forcing a foreign national to travel from its headquarters in a foreign country to the forum state and submit itself to a foreign judicial system is inherently burdensome. *See Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. De. Equip. Medico*, 563 F.3d 1285, 1299 (Fed. Cir. 2009); *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*, 480 U.S. 102, 114 (1987). NRC is a Canadian company with Canadian employees, and it has not engaged in a single infringing act in Tennessee. Pigeon Decl. ¶¶ 2-8. Therefore, this factor favors NRC.

Second, the Eastern District of Tennessee has little interest in adjudicating this action. None of the allegedly infringing activities in this case occurred in Tennessee. *Dochnal v. Thomson Reuters Co.*, No. 2:18-cv-00044, 2018 U.S. Dist. LEXIS 178458, at *14-15 (E.D. Tenn. Oct. 17, 2018) (stating that the fact that "[n]one of the underlying events occurred in Tennessee" suggested that Tennessee did not have any interest in adjudicating the dispute). While Miller is a resident of the state of Tennessee, this alone is not sufficient to make personal jurisdiction in the Eastern District of Tennessee fair and reasonable where there is no indication that another federal court would be any less likely to secure the rights of Tennessee citizens. *Snider v. Stediley & Neal, PLLC*, No. 1:12-cv-423, 2013 U.S. Dist. LEXIS 76640, at *26 (E.D. Tenn. May 31, 2013). For this reason, this factor also favors NRC.

13

Third, Miller has an interest in obtaining relief in its home state. But there is no reason to suppose that Miller would be unable to obtain convenient and effective relief in another district. *Id*. at \*27. Thus, this factor is neutral.

Fourth, the Eastern District of Tennessee is not the location of the most efficient administration of justice. Where "[the] defendant has no presence in the forum, all of the events underlying the dispute occurred in another forum, and all of the evidence and witnesses are there as well," it weighs against the reasonableness of personal jurisdiction in the forum state. *Dochnal*, 2018 U.S. Dist. LEXIS 178458, at \*14-15. Additionally, none of the facts pertaining to the accused activities lie in the Eastern District of Tennessee as NRC has not committed any infringing acts in Tennessee. On the other hand, the patentee and inventors are located in Tennessee. Dkt. 24 at ¶ 2. Accordingly, this factor is also neutral.

Finally, there is no reason that litigating the present action in the Eastern District of Tennessee is necessary to further the fundamental social policies of the several states. The federal courts of another jurisdiction are equally equipped to handle the present infringement action and likely have an even greater interest in doing so given that none of the infringing acts have occurred in Tennessee. Therefore, this factor favors NRC as well.

Consideration of the relevant factors, in view of the absence of any relevant contacts of NRC to the forum, confirms that exercise of jurisdiction over NRC would be both unfair and unreasonable. Therefore, the Court should dismiss this action for lack of personal jurisdiction.

## II.     MILLER'S CLAIMS MUST BE DISMISSED BECAUSE THEY FAIL TO STATE A CLAIM OF INFRINGEMENT

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a "complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain recovery under some viable legal theory." *Mezibov v. Allen*, 411

14

F.3d 712, 716 (6th Cir. 2005). Conclusory allegations or legal conclusions cloaked as factual allegations will not suffice to survive a motion to dismiss. *Id*. "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## A. Miller Fails to Plausibly Allege Infringement of U.S. Patent No. 9,440,577

Plaintiffs must "plausibly allege that the accused product practices each of the limitations found in at least one asserted claim." *Filter Plus, Inc. v. O R Co. & Surgical Principals*, No. 16-12974, 2017 U.S. Dist. LEXIS 26792, at *5 (E.D. Mich. Feb. 27, 2017) (citing *e.Digital Corp. v. iBaby Labs, Inc.*, No. 15-cv-05790, 2016 U.S. Dist. LEXIS 111689, at *8 (N.D. Cal. Aug. 22, 2016) (collecting cases))). Sufficient allegations require ***facts*** that plausibly indicate that Defendant's accused products practice each of the claim limitations. *North Star Innovations, Inc. v. Micron Tech., Inc.*, No. 17-506-LPS-CJB, 2017 U.S. Dist. LEXIS 189624, at *3 (D. Del. Nov. 16, 2017). "[A] patentee cannot meet its obligation to assert a plausible claim of infringement under the *Twombly/Iqbal* standard by merely copying the language of a claim element, and then baldly stating (without more) that an accused product has such an element." *Id*. at *4.

### 1. Miller fails to plausibly allege that the accused product practices each of the limitations found in claim 1

Miller fails to plausibly allege that the accused products practice each of the limitations found in claim 1. Specifically, claim 1 requires a control panel wherein "the control panel in the first position is operable to close off the interior compartment from an operator of the wrecker controls . . . ." (Ex. 1 at col. 9:43-44.) Miller alleges that "upon information and belief, the interior compartment of the NRC's wreckers ***has a door that closes off the interior compartment*** with the control panel." Dkt. 24 at ⁋ 15. But the claim does not require a door that

15

closes off the interior compartment, it requires ***the control panel to close off the interior compartment***.  The control panel of NRC's accused product does not close off the interior compartment.  Instead, in the first ("storage") position, the control panel sits inside the interior compartment, which is fully open and accessible.

The only thing that closes off access to the interior compartment is the traditional compartment door found on virtually all prior art devices.  (*See* Dkt. Ex. 1 at Fig 1 (entitled "Prior Art").)  The door is not part of the control panel.  The control panel is not connected to the door, they are entirely discrete parts.  While this evidence need not be considered for purposes of resolving NRC's motion to dismiss under Rule 12(b)(6), the door and the control panel must be independently operated.  The door must be opened before control panel can be extended to a second position.[2]  And the control panel must be returned to the first (storage) position before the door can be closed.  The need to separately operate the door and the control panel ***further*** confirm that the door is not a part of the control panel.  Because the door—not the control panel—closes off the interior compartment, Miller has not and cannot plausibly allege infringement of claim 1.

### 2.    Miller fails to plausibly allege that the accused product practices each of the limitations found in claim 16

Claim 16 requires a control panel, "wherein the control panel ***comprises*** an outwardly-opening door . . . ."  (Ex. 1 at col. 10:30-33 (emphasis added).)[3]  As previously discussed, the

---

[2] Only a portion of the control panel is movable to a second position located outside for the compartment.  The monitor and related controls are fixed inside the compartment.  *See* Pigeon Decl. Ex. A.

[3] The term "comprising" has a special meaning in patent law, as it permits the inclusion of additional elements or steps beyond those specified in the claim. That meaning is not implicated by the present motion, which focuses solely on whether the control panel comprises a door, or whether the door is a separate and distinct part relative to the control panel of the accused device.

control panel of NRC's accused product does not include a door. Instead, the door and the control panel are entirely discrete parts that must be separately operated. Pigeon Decl. Ex. B. For at least this reason, Miller has not and cannot plausibly allege that NRC's accused product infringes every element of claim 16.

Additionally, claim 16 is a method claim. "To infringe a method claim, a person must have practiced all steps of the claimed method." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009). Accordingly, "[i]n order to plead a cause of action for direct infringement of a method claim, the complaint must allege that the accused infringer performed all the steps of the claimed method, either personally or through another acting under his direction or control." *See Kyowa Hakka Bio, Co. Ltd. v. Ajinomoto Co.*, No. 17-313, 2018 U.S. Dist. LEXIS 22392, at *7 (D. Del. Feb. 12, 2018). Miller does not allege that NRC performed all the steps of the claimed method—instead, Miller alleges only that "[t]he Accused Products infringe Claim 16, as well as dependent claims 17, 20, and 21." Dkt. 24 at ⁋ 25. For this reason as well, Miller has not plausibly alleged that NRC has performed the method of claim 16.

### 3. Miller fails to plausibly allege that the accused product practices each of the limitations found in dependent claims 2-3, 6-8, 11, 13, 17, 20 and 21

Because Miller fails to plausibly allege that the accused product practices each of the limitations found in independent claims 1 and 16, as a matter of law it also fails to plausibly allege infringement of the claims 2-3, 6-8, 11, 13, 17, 20, and 21 which depend therefrom.

### B. Miller Failed to Plausibly Allege Infringement of the Asserted Design Patents

Miller has also failed to plausibly allege infringement of the two asserted design patents. "Design patent protection is very narrow, covering only what is shown in the drawings in the patent." *Hartco Engg, Inc. v. Wang's Int'l, In.*, 142 Fed. Appx. 455, 458 (Fed. Cir. 2005) (citing

17

*In re Mann*, 861 F.2d 1581, 1582 (Fed. Cir. 1988)).  To assess infringement of a design patent, the court must apply the so-called "ordinary observer" test, which asks whether the ordinary observer would be deceived by the accused design because it is substantially similar to the patented design.  *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008); *Arminak & Assocs. v. Saint-Gobain Calmar, Inc.*, 501 F.3d 1314, 1324 (Fed. Cir. 2007).

A claim for design patent infringement cannot survive on mere conclusory allegations—rather, it is the patentee's burden to explain "how or why an ordinary observer would be deceived into thinking that the accused products are the same as the patented design."  *Anderson v. Kimberly-Clark Corp.*, 570 Fed. Appx. 927, 934 (Fed. Cir. 2014); *see also OurPet's Co. v. Iris USA, Inc.*, No. 1:34-cv-1642, 2015 U.S. Dist. LEXIS 185150, at *4-5 (N.D. Ohio Mar. 23, 2015).  Miller's conclusory and unsupported allegations are not sufficient to plausibly allege how or why an ordinary observer would be deceived into thinking the accused products are the same as the patented designs.

The Federal Circuit has emphasized that "[t]he proper comparison [of designs] requires a side-by-side view of the drawings of the [patented design] and the accused product."  *Crocs, Inc. v. ITC*, 598 F.3d 1294, 1303-04 (Fed. Cir. 2010).  Miller fails to provide the proper side-by-side comparison of the entire designs necessary to show infringement, and provides no explanation as to why the designs *as a whole* would be substantially similar to the ordinary observer.  Instead, Miller improperly tries to reduce its design patents to three features: "(a) a compartment located on the side of a rotating wrecker that houses wrecker controls; (b) a hinged door that opens outwardly; and (c) wrecker controls resting on that opened door, with the wrecker controls in an ergonomically acceptable position for allowing operating control."  Dkt. 24 at 6.  But one of the

18

designs is to just the control panel, and has nothing to do with where it is located and can be moved. And the other is directed to that exact same control panel being affixed to the door.

The Federal Circuit stated that "the claimed design and the accused design [may] be sufficiently distinct that it will be clear without more that the patentee has not met its burden of proving the two designs would appear 'substantially the same' to the ordinary observer . . . . " *Egyptian Goddess*, 543 F.3d at 678. As such, where "plain differences" exist between the product and the accused design, the Federal Circuit routinely affirms district courts' dismissal of infringement claims. *Anderson*, 570 Fed. Appx. at 933-34; *see also Colida v. Nokia, Inc.*, 347 Fed. Appx. 568, 570 (Fed. Appx. 2009) (dismissing infringement claims was proper where the claims "were facially implausible and provided the district court with no basis on which to reasonably infer that an ordinary observer would confuse the pleaded patented designs with the accused [design]"); *Pepitone v. American Standard*, No. 92-1284, 1992 U.S. App. LEXIS 30867, at *6 (Fed. Cir. 1992) ("We agree with the court that the [accused product] does not infringe [the design patent claim] because the two designs are not substantially similar . . . . [p]roper disposition of this claim would therefore have been under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.").

Where the accused product and patented design are sufficiently distinct, the court "need only take judicial notice of the design patent drawings and photos of the Accused Infringing Product" to properly construe the claims and rule on the motion to dismiss. *OurPet's Co.*, 2015 U.S. Dist. LEXIS 185150, at *5; *see also Cotapaxi Custom Design & Mfg., LLC v. Corporate Edge, Inc.*, No. 06-5183, 2007 U.S. Dist. LEXIS 73172, at *9 (D.N.J. Sept. 28, 2007), *aff'd* 284 Fed. Appx. 809 (Fed. Cir. 2008). For example, in *Anderson*, the district court held that the plaintiff failed to state a plausible claim for design patent infringement concerning an

19

"ornamental design for an absorbent disposable undergarment" solely by conducting a side-by-side comparison of the products:

 

570 Fed. Appx. at 928-31. The Federal Circuit affirmed, noting that the court properly identified several striking differences between the products including: (1) that the patented design contained "bloomers-style" undergarments while the accused design contained "briefs'-style" undergarments; (2) the leg and waist openings of the patented design were parallel rather than at a 45-degree angle like the accused products; and (3) the patented design required an "inverted U-shape" whereas the accused design did not. *Id*. at 933.

### 1. Miller has not plausibly alleged infringement of the D'963 patent

The differences between the claim of the D'963 patent and the accused products in this case are even more striking than the differences in *Anderson*. A proper side-by-side comparison of the NRC product and the design claim of the D'963 patent shows that the designs are plainly dissimilar:

20

## NRC Industries



Monitor & buttons

Open U-shaped portion of control panel

Housing defines side profile

Control panel affixed to door

These pictures show a host of fundamental differences in the accused design and claimed

design of the D'963 patent.

1. In the claimed design the entire control panel is affixed to the door, whereas in the accused design no portion of the accused design is affixed to a door;

2. In the claimed design the control panel is a single, unitary body, whereas the control panel of the accused design has two completely separate components containing controls;

3. In the claimed design the entire control panel is movable to a second position exterior of the compartment, whereas in the accused design only half of the control panel is movable to a second position;

4. In the claimed design, there is a housing that surrounds the control panel that serves to define the shape of the control panel, most notably from each side profiles; whereas the housing of the accused design has a completely different appearance and does not provide a walled-off appearance to the side profile.

5. In the claimed design there is a distinct U-shaped, open portion in the center of the control panel, whereas no such space appears in the control panel of the accused design (and could not because the control panel of the accused design is comprised of two discrete portions)

6. In the claimed design, the monitor has buttons located on both sides of the screen and can be moved to a second exterior position; whereas in in the accused design, the monitor is fixed inside the interior of the compartment and does not have the buttons located on both sides of the screen.

7. In the claimed design one portion of the control panel has an emergency stop to the upper left of the joystick/paddle controls and four push buttons on the housing above the paddles; in the accused design the emergency stop is centered below those paddle/joystick controls, and there are not any push buttons on the housing above the paddles.

These are just some of the differences between the designs.  It is difficult to articulate all of the

differences because—in the end—the claimed design and accused design are fundamentally

different in appearance.  The only commonalities are functional in nature, and design features

that are dictated by function are not protected by design patents.  *Sport Dimension, Inc. v.

Coleman, Co.*, 820 F.3d 1316, 1320 (Fed. Cir. 2016) ("[T]he scope of a design patent claim must

be limited to the ornamental aspects of the design.").   In any event, a simple visual inspection confirms that Miller has not, and cannot plausibly allege infringement of the D'963 patent.

>    2.    **Miller has not plausibly alleged infringement of the D'492 patent**

As with the D'963 patent, the claims of the D'492 patent and the accused products are plainly dissimilar:

## <u>NRC Industries</u>



<u>D752,492</u>



The differences between the accused product and the D'492 patent claim largely mirrors the differences identified with respect to the D'963 patent.  Specifically, each of differences (2)-(7) set forth with respect to D'963 patent also apply to the comparison of the claim of  D'492 and the design of the accused product. And once again, these are just some of the differences

23

between the two designs. As with the D'963 patent claims, the only commonalities between the designs are unprotectable features that are dictated by function. *Sport Dimension*, 820 F.3d at 1320. Once again, Miller has not, and cannot, plausibly allege that the accused products fall within the very narrow scope of the D'492 patent claims.

For the reasons identified above, NRC's product is not covered by the asserted design patents. Accordingly, the Court should dismiss Miller's infringement claims.

## <u>CONCLUSION</u>

NRC does not have continuous and systematic contacts with Tennessee sufficient to support the exercise of general jurisdiction. Nor has NRC purposefully availed itself of any of the benefits or privileges of conduction business in Tennessee. Finally, Miller has failed to state any claim of infringement upon which relief can be granted. Accordingly, this Court must dismiss this action under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).[4]

---

[4] NRC believes all of the infringement claims in this case are so readily refuted as to be frivolous, and NRC intends to seek recovery of its fees pursuant to 35 U.S.C. § 285 following dismissal of these claims.

24

Dated: May 20, 2019

Respectfully submitted,

s/ *J. Derek Vandenburgh*
J. Derek Vandenburgh (MN # 224145)
Todd S. Werner (MN # 033019X)
Alexander S. Rinn (MN # 0395616)
CARLSON, CASPERS, VANDENBURGH &
LINDQUIST, P.A.
225 South Sixth Street, Suite 4200
Minneapolis, MN 55402
Telephone: (612) 436-9600
Facsimile: (612) 436-9605
dvandenburgh@carlsoncaspers.com
twerner@carlsoncaspers.com
arinn@carlsoncaspers.com

*s/Timothy L. Mickel*
Timothy L. Mickel (TN BPR # 17486)
EVANS HARRISON HACKETT PLLC
835 Georgia Avenue, Suite 800
Chattanooga, TN 37402
Telephone: (423) 648-7890
Facsimile: (423) 648-7897
tmickel@ehhlaw.com

*Attorneys for Defendant NRC Industries*

## CERTIFICATE OF SERVICE

I do hereby certify that the foregoing document has been filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail and/or facsimile, or hand delivery. Parties may access this filing through the Court's electronic filing system.

This 20th day of May, 2019.

**EVANS HARRISON HACKETT PLLC**

*s/Timothy L. Mickel*
Timothy L. Mickel