**THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**CHATTANOOGA DIVISION**

| | | |
|---|---|---|
| Miller Industries Towing Equipment Inc., | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | Case No.19-cv-95 |
| v. | ) | Hon. Pamela L. Reeves |
| | ) | |
| NRC Industries, | ) | |
| | ) | |
| *Defendant.* | ) | |

**PLAINTIFF MILLER INDUSTRIES TOWING EQUIPMENT INC.'S**
**BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

## TABLE OF CONTENTS

*Page*

I.   INTRODUCTION……………………………………………………………...1

II.  BACKGROUND……………………………………………………………1

III. NRC IS NOT ENTITLED TO DISMISSAL UNDER RULE 12(b)(2)…………………3

    A.   MITE Has Established A Prima Facie Case For This
Court's Personal Jurisdiction Over NRC Under The Tennessee
Long-Arm Statute………………..…………………….........................4

    1.   NRC purposefully availed itself of Tennessee's forum...…………………5

    2.   Subjecting NRC to Tennessee jurisdiction is reasonable/fair…………….12

    B.   Jurisdiction In This Court Is Proper Under Rule 4(k)(2)…………………………14

IV.  NRC IS NOT ENTITLED TO DISMISSAL
OF THE COMPLAINT UNDER 12(b)(6)……………………………………………18

    A.   MITE Plausibly Alleges Infringement Of The '577 Utility Patent………………18

    B.   MITE Plausibly Alleges Infringement
Of The '963 and '492 Design Patents……………………………………………23

V.   CONCLUSION………………………………………………………………..…25

i

# TABLE OF AUTHORITES

**Cases**                                                                    *Page*

*Agis Softward Dev. LLC v. HTC Corp.,*
2018 U.S. Dist. LEXIS 167029 (E.D. Tex. Sept. 28, 2018)………………………………9, 13-14

*Akro Corp. v. Luker*,
45 F.3d 1541 (Fed. Cir. 1995)………………………………………………………………4-5, 13

*Alisoglu v. Cent. States Thermo King of Okla., Inc.,*
2012 U.S. Dist. LEXIS 66246 (E.D. Mich. May 11, 2012)………………………………………6

*Am. GNC Corp. v. Go-Pro, Inc.,*
2018 U.S. Dist. LEXIS 192256 (S.D. Cal. Nov. 6, 2018)…………………….............6, 10, 14, 16

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.,*
566 F.3d 1012 (Fed. Cir. 2009)………………………………………………………………4

*Asahi Metal Ind. Co. v. Superior Ct. of Cal.,*
480 U.S. 102 (1987)…………………………………………………………………...9, 17

*Beverly Hills Fan. Co. v. Royal Sovereign Co.,*
21 F.3d 1558 (Fed. Cir. 1994)……………………………………………………8, 9, 12, 13

*Blizsafe Tex., LLC v. Bayerische Motoren Werke AG,*
2018 U.S. Dist. LEXIS 173065 (E.D. Tex. Sept. 6, 2018)………………………………………9

*BOS GmbH & Co KG v. Macauto USA, Inc.,*
2017 U.S. Dist. LEXIS 209942 (E.D. Mich. Dec. 21, 2017)……………………………………13

*Bridgeport Music, Inc. v. Still N The Water Pub.,*
327 F.3d 472 (6th Cir. 2003)……………………………………………………………...4

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462 (1985)………………………………………………………………………...12

*De Simone v. VSL Pharms., Inc.,*
2017 U.S. Dist. LEXIS 22589 (D. Md. Feb. 16, 2017)…………………………………………16

*Digital Filing Sys., Inc. v. Frontier Consulting, Inc.,*
2006 U.S. Dist. LEXIS 38877 (E.D. Mich. June 13, 2006)……………………………………6

*Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.,*
297 F.3d 1343 (Fed. Cir. 2002)………………………………………………………………3

ii

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
543 F.3d 665 (Fed. Cir. 2008)……………………………………………………23, 24

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.,*
796 F.3d 1312 (Fed. Cir. 2015)……………………………………………………..23

*Filter Plus, Inc. v. O R Co. & Surgical Principals,*
2017 U.S. Dist. LEXIS 26792 (E.D. Mich. Feb. 27, 2017)……………………………...18, 21, 22

*Five Star Gourmet Foods, Inc. v. Ready Pac Foods, Inc.,*
2019 U.S. Dist. LEXIS 45238 (C.D. Cal. Mar. 18, 2019)………………………………...23, 24

*Ford Global Techs. LLC  v. New World Int'l, Inc.,*
2016 U.S. Dist. LEXIS 78384 (E.D. Mich. June 16, 2016)………………………………………….9

*Gibson Brands, Inc. v. Tronical Components GmbH,*
2018 U.S. Dist. LEXIS 168052 (M.D. Tenn. Sept. 28, 2018)………………………………...11

*Gordon v. Greenview Hosp., Inc.,*
300 S.W.3d 635 (Tenn. 2009)………………………………………………………………..4

*Gorham Co. v. White,*
81 U.S. 511 (1872)……………………………………………………………………23

*Grober v. Mako Prods., Inc.,*
686 F.3d 1335 (Fed. Cir. 2012)……………………………………………………………3

*Holotouch, Inc. v. Microsoft Corp.,*
2018 U.S. Dist. LEXIS 84152 (S.D.N.Y. May 18, 2018)…………………………………………..22

*HTC Sweden AB v. Innovatech Prods. & Equip. Co.,*
2010 U.S. Dist. LEXIS 52124 (E.D. Tenn. May 27, 2010)………………………………...11

*In re Barnes & Noble, Inc.,*
743 F.3d 1381 (Fed. Cir. 2014)……………………………………………………………15

*Intera Corp. v. Henderson,*
428 F.3d 605 (6th Cir. 2005)………………………………………………………...3

*International Shoe Co. v. Washington,*
326 U.S. 310 (1945)……………………………………………………………………5

*ISI Int'l, Inc. v. Borden Ladner Gervais LLP,*
256 F.3d 548 (7th Cir. 2001)………………………………………………………………15

iii

*Litton Sys. v. Whirlpool Corp.*,
728 F.2d 1423 (Fed. Cir. 1984)……………………………………………………24

*Markman v. Westview Instr., Inc*.,
517 U.S. 370 (1996)……………………………………………………………...19

*Merial Ltd. v. Cipla Ltd.,*
681 F.3d 1283 (Fed. Cir. 2012)……………………………………………………14

*M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda*.,
890 F.3d 995 (Fed. Cir. 2018)……………………………………………3, 12, 13, 16, 17

*NexLearn v. Allen Interactions, Inc*.,
859 F.3d 1371 (Fed. Cir. 2017)……………………………………………………7

*Noco Co. v. Shenzhen Valuelink E-Commerce Co.*,
2018 U.S. Dist. LEXIS 108336 (N.D. Ohio June 28, 2018)……………………………22

*N. Am. Philips Corp. v. Am. Vending Sales, Inc*.,
35 F.3d 1576 (Fed. Cir. 1994)……………………………………………………13

*North Star Innovations, Inc. v. Micron Tech., Inc*.,
2017 U.S. Dist. LEXIS 189624 (D. Del. Nov. 16, 2017)………………………………22

*Nuance Communs., Inc. v. Abbyy Software House*,
626 F.3d 1222 (Fed. Cir. 2010)……………………………………………………5

*Patent Rights Protection Grp., LLC v. Video Gaming Techs., Inc.*,
603 F.3d 1364 (Fed. Cir. 2010)……………………………………………………3, 5

*Payless Shoesource, Inc. v. Reebok Int'l, Ltd.,*
998 F.2d 985 (Fed. Cir. 1993)……………………………………………………23

*Pfaff v. Wells Elecs., Inc.,*
525 U.S. 55 (1998)……………………………………………………………11

*Reese v. CNH America LLC,*
574 F.3d 315 (6th Cir. 2009)……………………………………………………16

*Serv. Solutions, U.S., LLC v. Autel US Inc.*,
2013 U.S. Dist. LEXIS 150036 (E.D. Mich. Oct. 18, 2013)……………………………9

*Silent Drive, Inc. v. Strong Indus., Inc*.,
326 F.3d 1194 (Fed. Cir. 2003)……………………………………………………5

iv

*Silva v. Pavlak,*
2018 U.S. Dist. LEXIS 170925 (W.D.N.C. Oct. 3, 2018)…………………………………...11, 13

*Stien v. Hhgregg, Inc.,*
873 F.3d 523 (6th Cir. 2017)……………………………………………………………18

*Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. de Equip. Medico,*
563 F.3d 1285 (Fed. Cir. 2009)……………………………………………4, 5, 13, 14, 15, 16, 17

*The Cadle Co. v. Schlichtmann,*
123 Fed. Appx. 675 (6th Cir. 2005)……………………………………………………………6

*Touchcom, Inc. v. Bereskin & Parr,*
574 F.3d 1403, 1410 (Fed. Cir. 2009)……………………………………………4, 5, 14, 15

*WesternGeco LLC v. Ion Geophysical Corp.,*
776 F. Supp. 2d 342 (S.D. Tex. 2011)……………………………………………...11, 13, 17

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.,*
952 F. Supp. 1119 (W.D. Pa. 1997)……………………………………………………………6

**Statutes and Rules**

Fed. R. Civ. P. 12(b)(2)…………………………………………………………....1, 2, 3

Fed. R. Civ. P. 12(b)(6)…………………………………….................1, 3, 18, 19, 21, 22

Fed. R. Civ. P. 4(k)(1)……………………………………………1, 4, 15, 16, 17

Fed. R. Civ. P. 4(k)(2)……………………………………………...1, 14, 15, 16, 17

Tennessee Code Annotated § 20-2-214…………………………………………………...4

**Secondary Sources**

The Presence of a Web Site as a Constitutionally Permissible Basis for Personal Jurisdiction,
73 Ind. L. J. 297 (1997)……………………………………………………………6-7

# I.     INTRODUCTION

NRC's FRCP 12(b)(2) personal jurisdiction argument must fail, given the substantial contacts NRC's accused products have with Tennessee, such that personal jurisdiction lies under FRCP 4(k)(1) and the Tennessee long-arm statute, as detailed in §III, A, below.  In the alternative, personal jurisdiction over NRC may be asserted in Tennessee under the "federal long-arm statute," FRCP 4(k)(2), based on NRC's contacts with the United States as a whole out of which the patent infringement claims of Miller Industries Towing Equipment Company Inc. ("MITE") arise, as set forth in §III, B, below.

NRC's FRCP 12(b)(6) argument that MITE has not plausibly alleged infringement must also fail.  As detailed in §IV, below, NRC improperly relies on materials outside the complaint for its Rule 12(b)(6) motion, and also argues for dismissal based on a claim construction for MITE's utility patent that is simply wrong.  Beyond prematurely asking this Court to adopt its view of claim construction, NRC also improperly seeks a ruling that the design of the accused products is dissimilar from MITE's design patents, a factual issue that cannot be resolved on the pleadings.

# II.    BACKGROUND

The parties are direct competitors in the manufacture and sale of towing vehicles known as "rotating wreckers" – "rotators" for short (Ex. A, Hawkins Dec., ¶¶3-4).  Rotators are heavy-duty tow trucks for recovering or moving disabled vehicles or other equipment.  They include an overhead boom that may be swung about or rotated, and retail for $400,000 or more.  *Id.*  MITE filed suit against NRC on March 29, 2019 alleging that an extendable arm carrying the rotator controls[1] on NRC's "CSR" model rotators ("the accused products") infringe one MITE utility

---

[1] The rotator controls may be used to control hydraulic functions such as swinging or rotating the overhead boom, or to control electrical functions such as lighting and other operations (Ex. A, Hawkins Dec., ¶¶3-4).

1

patent (Dkt 24-1) and two MITE design patents (Dkt 24-2, 24-3). NRC was served with process while attending an industry trade show on April 12, 2019 in Orlando, Florida (Dkt 19-1). MITE filed its First Amended Complaint (Dkt 24) on May 6, 2019. On May 20, 2019, NRC filed a motion to dismiss (Dkt 33) under FRCP 12(b)(2) for lack of personal jurisdiction, as well as under FRCP 12(b)(6) for failure to state a claim for relief.

MITE's principal place of business is at 8503 Hilltop Drive, Ooltewah, Tennessee. NRC is a Canadian company with its principal place of business in Quebec, Canada (Dkt 35, Pigeon Dec. ¶2). MITE and NRC both sell rotators to a national customer base, including Tennessee residents, and advertise to these customers using the same mediums, such as through their websites, national trade magazines circulated in Tennessee, and trade shows (Ex. A, Hawkins Dec., ¶4).

NRC admits that it began to market rotators with the accused controls in November 2017 (Dkt 35, Pigeon Dec., ¶7). But the Pigeon Declaration *says nothing about offers for sale of the accused controls* in Tennessee; this is a telling omission. The record shows that NRC specifically advertises to and targets prospective Tennessee customers by *offering for sale* rotators using the accused infringing products. One Tennessee entity of which MITE is specifically aware, which currently owns and operates NRC rotators in Tennessee, is Mace's Heavy Duty Towing, located in Memphis, Tennessee (Ex. A, Hawkins Dec., ¶5). The owner, Mike Mace, viewed a demonstration by NRC of the accused product at the Florida industry trade show in April 2019 where MITE was served with this lawsuit (*id.*). At the time, Mace's Towing already owned an NRC rotator that it used in conducting its business in Tennessee, which it had purchased from an NRC dealer located in Roanoke, Virginia (*id.*). Mace's Towing had also placed an order with the same dealer for a new NRC rotator (NRC's 50/65 CSR) in late 2018 or early 2019, prior to Florida

trade show.[2]  The new NRC rotator is due to be delivered to Mace's Towing in approximately December 2019-January 2020, as NRC currently has its rotators on backorder (*id.*).  Significantly, Mike Mace told MITE's John Hawkins that Mace's intention is that the accused infringing NRC controls will be included on the new rotator that has been ordered but not yet been delivered.  *Id.*

## III.  <u>NRC IS NOT ENTITLED TO DISMISSAL UNDER RULE 12(b)(2)</u>

NRC has moved to dismiss the complaint pursuant to FRCP 12(b)(2), and asserts it is not subject to personal jurisdiction in Tennessee court.  NRC's Rule 12(b)(2) Motion relies on the declaration (Dkt 35) of its General Manager, Stéphane Pigeon, which recites facts outside the Complaint.  In opposition to NRC's motion, MITE has filed the Declaration of its Vice President of Heavy-Duty Wrecker Sales, John Hawkins.  The Court has the discretion to decide the jurisdictional question raised by NRC's motion based on the pleadings and competing declarations.  *See Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1347 (Fed. Cir. 2002); *Intera Corp. v. Henderson*, 428 F.3d 605, 614 n.7 (6th Cir. 2005).[3]  If the Court rules based on the pleadings and competing declarations, MITE need only make a *prima facie* case for personal jurisdiction.  *See M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 999 (Fed. Cir. 2018).  In addition, the Court must accept uncontroverted allegations in MITE's pleadings as true and resolve any factual conflicts in the declarations in MITE's favor.  *Id.*

---

[2] While believed unnecessary, given the facts here, discovery would likely confirm that an *offer for sale* (itself an infringing act under 35 U.S.C. §271) – in addition to a sale – of the accused product to a Tennessee resident occurred at the Florida show, given the presentation to Mace at the show, and the earlier price quote he received from NRC.

[3] The law of the Federal Circuit applies to personal jurisdiction challenges in patent infringement actions, *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1345 (Fed. Cir. 2012), although Sixth Circuit law may apply to the procedure followed by the Court in deciding that issue, *see Patent Rights Protection Grp., LLC v. Video Gaming Techs., Inc.*, 603 F.3d 1364, 1371 (Fed. Cir. 2010) (regional law applies to issues not unique to patent law).

3

However, FRCP 12(d) mandates that such motions where matters "outside the pleadings are presented … must be treated as one for summary judgement under Rule 56."

### A. MITE Has Established A Prima Facie Case For This Court's Personal Jurisdiction Over NRC Under The Tennessee Long-Arm Statute

"Analysis of personal jurisdiction in federal court begins with Rule 4 of the Federal Rules of Civil Procedure." *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1410 (Fed. Cir. 2009), citing *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. de Equip. Medico*, 563 F.3d 1285, 1297 (Fed. Cir. 2009). Under Rule 4(k)(1)(A), if the state court would have personal jurisdiction over the defendant, then a federal court in the same state will as well. This occurs if the state's long-arm statute permits the court's assertion of jurisdiction and the assertion of jurisdiction does not violate constitutional due process under the Fourteenth Amendment. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009). The Federal Circuit "defer[s] to the interpretation of a state's long-arm statute given by that state's highest court." *Touchcom*, 574 F.3d at 1409.

The Tennessee Supreme Court finds that the state long-arm statute (Tennessee Code Annotated § 20-2-214) expands the jurisdiction of Tennessee courts to the full limit permitted by the due process clause. *Gordon v. Greenview Hosp., Inc*., 300 S.W.3d 635, 645-46 (Tenn. 2009); *see also Bridgeport Music, Inc. v. Still N The Water Pub.,* 327 F.3d 472, 477 (6th Cir. 2003). When this is the case, the Court need only determine whether the exercise of personal jurisdiction violates due process. *See Touchcom, supra*, 574 F.3d at 1411.

Due process permits a court to exercise personal jurisdiction over a foreign defendant when: (1) that defendant has purposefully availed itself of the benefits and protections of the forum state by establishing minimum contacts with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice. *Akro*

4

*Corp. v. Luker*, 45 F.3d 1541, 1544 (Fed. Cir. 1995) (adopting the standard imposed by *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). As to specific jurisdiction[4], the "minimum contacts" prong requires a showing that the defendant has "purposefully directed his activities at residents of the forum" and that the claim arises out of or relates to the defendant's activities with the forum. *Nuance Communs., Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010). In general, when the cause of action at issue arises out of or relates to the defendant's contacts with the forum, the court may properly assert specific jurisdiction, even if the contacts are isolated and sporadic. *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1200 (Fed. Cir. 2003). Indeed, a "substantial connection" with a forum arising out of a "single act can support jurisdiction." *Synthes*, 563 F.3d at 1297. If a plaintiff successfully makes a *prima facie* showing of minimum contacts, the burden shifts to the defendant to show that traditional notions of fair play and substantial justice would be violated by the exercise of jurisdiction. *Patent Rights Prot. Group, LLC*, *supra,* 603 F.3d at 1369.

### 1. NRC purposefully availed itself of Tennessee's forum

The record establishes purposeful availment by NRC as a result of at least the following facts. *First*, NRC markets its CSR rotators with the accused infringing option to Tennessee residents by posting rotator training videos to nationally accessible third-party websites, such as *YouTube* (Ex. A, Hawkins Dec. ¶10),[5] and by advertising to potential customers located in

---

[4] Courts may exercise personal jurisdiction over a defendant on either of two bases: general or specific jurisdiction. *Touchcom, Inc.*, 574 F.3d at 1410. Absent discovery, MITE does not contend that NRC is subject to general jurisdiction in Tennessee, and therefore limits its discussion here to specific jurisdiction.

[5] One such NRC training video is titled "Mid-air Roll with Tanker," filmed in Chattanooga, Tennessee (dated 9/12/2016) (*see* https://www.youtube.com/watch?v=B9jxyGgFvj4). *See* Ex. A, Hawkins Dec., ¶10.

5

Tennessee through major trade magazines such as *Tow Times* and *American Towman* (*id.* ¶¶7,11). *Tow Times* has approximately 1,127 subscribers in Tennessee, while *American Towman* has approximately 840 (*id.* ¶11). NRC's CSR rotators, *including the specific accused infringing NRC controls*, are advertised and promoted to Tennessee residents in each of these magazines (*id.*, ¶4, and Ex. 1 (excerpt of May 2019 edition of *American Towman* showing NRC advertisement of the infringing NRC controls used on a NRC rotator)). Thus, NRC's assertion to the Court that it has not "marketed *in* Tennessee since it began selling the accused wrecker controls" (NRC Br. at 12, Dkt 34, emphasis added) is incorrect.[6]

*Second*, NRC advertises its CRS wreckers with the infringing controls to Tennessee residents through its nationally-accessible interactive website (http://nrc-industries.com/) (Ex. A, Hawkins Dec. ¶¶9, 10, Ex.1). "An interactive website can subject the defendant to specific personal jurisdiction." *Alisoglu v. Cent. States Thermo King of Okla., Inc.,* 2012 U.S. Dist. LEXIS 66246, *16 (E.D. Mich. May 11, 2012), citing *The Cadle Co. v. Schlichtmann,* 123 Fed. Appx. 675, 678 (6th Cir. 2005); *see also Digital Filing Sys., Inc. v. Frontier Consulting, Inc.,* 2006 U.S. Dist. LEXIS 38877, *9 (E.D. Mich. June 13, 2006) ("a defendant may be found to have purposefully availed itself of the privilege of acting in a state if it acts through a website that 'is interactive to a degree that reveals specifically intended interaction with residents of the state,'" quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)); Note,

---

[6] NRC cites to the Pigeon Declaration which is worded somewhat differently: "no employees of NRC have . . . *engaged in marketing efforts inside* Tennessee." Dkt. 35, Pigeon Dec. ¶7, Dkt 35 (emphasis added). The meaning of this statement is unclear, as NRC cannot deny that the accused products are advertised in the identified trade magazines, as shown in Exhibit 1 to Hawkins' declaration (Ex. A). In any event, any conflict in the facts here should be resolved in MITE's favor. *See Am. GNC Corp. v. Go-Pro, Inc.,* 2018 U.S. Dist. LEXIS 192256, *22-23 (S.D. Cal. Nov. 6, 2018) (declaration submitted by defendant did not specifically deny jurisdictionally relevant facts in the plaintiff's declaration, which the court construed in the light most favorable to the plaintiff).

6

*The Presence of a Web Site as a Constitutionally Permissible Basis for Personal Jurisdiction*, 73 Ind. L. J. 297, 326-27 (1997) (Ex. C) ("Of the two approaches to jurisdiction that district courts have developed, the more appropriate approach is that which favors jurisdiction over entities that solicit business through a web site.").

NRC's website invites potential and actual customers to contact NRC directly through its interactive website messaging features (*see* Ex. A, Hawkins Dec., Ex. 2, at pp. 3, 5). NRC's website also invites a prospective customer to "Find The [NRC] Dealer Nearest You" via an interactive map that shows NRC dealers' locations in relation to a prospective customer's location (*e.g.*, a Tennessee customer may be directed to either NRC's Roanoke, VA or Cartersville, GA distributors, *see id.*, p. 7). NRC invites any customers to submit to its interactive website publicly viewable photos, videos and testimonials regarding NRC's towing products (*id.*, at pp. 9-11). NRC invites customers to subscribe to NRC's Newsletter through its interactive website (*id.*, at p. 9); and informs customers of upcoming NRC events, such as trade shows or vehicle wrecker training seminars (*e.g.*, *id.*, at pp. 1, 14-20). NRC's website also recaps NRC's participation in the "100 Years of Tow Trucks" event, which was held in Chattanooga, TN in 2016 (*id.*, at pp. 1, 14-20). NRC's website and its marketing is also specifically tied to the accused infringing controls – e.g., the NRC 50/65 CSR rotator was mentioned in reference to NRC's display at the Chattanooga "100 Years of Tow Trucks" event (*id.* ¶8).[7]

---

[7] NRC cites *NexLearn v. Allen Interactions, Inc*., 859 F.3d 1371, 1379 (Fed. Cir. 2017), where the court held that the existence of an interactive website, "*without more*, is insufficient to show" minimum contacts. *Id.* at 1379 (emphasis added). As the court explained, "Something more is needed—whether it be actual sales, targeted advertising, or contractual relationships—to connect the defendant's infringing acts of making, using, offering, or selling its product with the forum State." *Id.* Here, the Hawkins Declaration establishes that "[s]omething more" missing in *NexLearn*, including targeted advertising to Tennessee residents through trade magazines distributed there, and through in-person demonstrations at a trade show, which was viewed by at

7

*Third*, NRC is a regular participant in U.S.-based towing trade shows, at which NRC markets its products directly to Tennessee residents, including the infringing product (Ex. A, Hawkins Dec., ¶12). For instance, NRC participated in a major towing trade show/Expo in Baltimore in 2017. *See* Ex. A, Hawkins Dec., ¶13. During this trade show, NRC displayed, promoted, and offered for sale NRC's large rotating slider vehicle wreckers with the infringing NRC controls (*see* https://www.youtube.com/watch?v=JkNGqMj6dZM, at 3:19-3:26 minute marks of the video).

NRC also displayed and marketed the accused product at a trade show in Orlando, Florida on April 11-14, 2019 (Ex. A, Hawkins Dec., ¶12). At this Florida trade show, MITE personnel saw NRC display, promote and offer for sale NRC's CSR vehicle wreckers with the accused infringing NRC controls – which were generally advertised and promoted to anyone who visited NRC's booth (*id.*) One such person who visited NRC's booth was Tennessee resident Mike Mace (*id.*). A number of other Tennessee residents were at the Florida trade show as well (*id.*). Indeed, as many as 30 prospective Tennessee customers were at the Florida trade show where NRC advertised and marketed its infringing product (*id.*); *see also* Ex. B, Crouch Dec., ¶¶2-3 (identifying 15 Tennessee towing entities present at the Florida tow show). NRC most likely registered to participate in that show before the March 29, 2019 filing date of this lawsuit. *Id.* Nor does the fact that the Florida trade show was contemporaneous with service of the complaint diminish its importance as a jurisdictional contact here. *See Beverly Hills Fan. Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1563 (Fed. Cir. 1994) (defendants' jurisdictionally relevant contacts occurring subsequent to the complaint considered because patent infringement is a

---

least one Tennessee resident who is expecting to receive delivery of an NRC wrecker with the infringing product after being exposed to NRC's marketing of that product at the trade show.

"continuous tort [such that] it would be arbitrary to identify a single moment after which defendant's contacts with the forum necessarily become irrelevant to the issue of specific jurisdiction").

NRC's targeting of the sale of its infringing products to Tennessee residents during trade shows constitutes purposeful availment under the due process clause. The fact that NRC does not sell rotators "directly" to customers in the U.S. (Dkt 35, Pigeon Dec. ¶5) is irrelevant. NRC has offered to place the accused products into the stream of commerce with knowledge that, through its established distribution to NRC dealers, the accused products "will be sold" in Tennessee. *Blizsafe Tex., LLC v. Bayerische Motoren Werke AG*, 2018 U.S. Dist. LEXIS 173065, \*5 (E.D. Tex. Sept. 6, 2018) (discussing *Beverly Hills Fan Co.,* 21 F.3d 1558). "This knowledge alone is more than sufficient to meet the requirements of" the "stream of commerce" test for personal jurisdiction over a foreign defendant who relies on third party distributors for its sales. *Id.; see also Agis Software Dev. LLC v. HTC Corp.,* 2018 U.S. Dist. LEXIS 167029, \*13-14 (E.D. Tex. Sept. 28, 2018); *Ford Global Techs. LLC v. New World Int'l, Inc.,* 2016 U.S. Dist. LEXIS 78384 (E.D. Mich. June 16, 2016); *Serv. Solutions, U.S., LLC v. Autel US Inc.*, 2013 U.S. Dist. LEXIS 150036, \*9-10 (E.D. Mich. Oct. 18, 2013).[8]

---

[8] The Federal Circuit prefers to assess jurisdiction premised on a stream of commerce theory on a case-by-case basis. *See Serv. Solutions*, *supra,* \*9-10. But district courts generally view *Beverly Hills* as the controlling authority on this issue. *See Blizsafe, supra,* \*5. Courts also look to see whether the conduct at issue "would suggest an intent or purpose to serve the market in the forum State, for example, ... advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Serv. Solutions,* \*11 (internal quotation marks omitted), quoting *Asahi Metal Indus. Co. v. Superior Ct. of Cal*., 480 U.S. 102, 112 (1987) (O'Connor, J., concurring). As discussed above, the record supports a finding that NRC relied on the "stream of commerce" in making a sale of the infringing product to a resident of Tennessee.

9

NRC may argue that these trade shows took place in states other than Tennessee. But their jurisdictional significance is in the fact that Tennessee residents attending those shows were targeted for sales of the infringing product. Due process is satisfied if the out-of-state conduct that caused the plaintiff's harm is the result of the defendant specifically targeting residents of that state through its tortious conduct. *See Am. GNC Corp.*, 2018 U.S. Dist. LEXIS 192256, *30 (rejecting defendant's argument that activities that occurred in Germany were not jurisdictionally relevant, and stating that Federal Circuit case law does not hold "that an activity cannot give rise to a patent infringement claim based on *where* the activity occurs") (emphasis in original).[9] Further, another towing trade show is scheduled for October 10-12, 2019 to take place in Chattanooga, Tennessee (Ex. A, Hawkins Dec., ¶14). This Tennessee trade show is being held in conjunction with the International Towing Hall of Fame, which is also located in Chattanooga (*see* www.tennesseetowshow.com). *Id.* Given that NRC has had a presence at many similar towing trade shows in the past, it is likely that NRC has also made plans, or will make plans, to be in attendance at this show as well. Ex. A, Hawkins Dec.*,* ¶14 and Ex. 4 (article showing NRC's participation in the third annual Tennessee Tow Show 2014 in Chattanooga, Tennessee). Jurisdictionally relevant contacts are likely to have occurred regarding NRC's preparation for attending this up-coming show in Tennessee.

*Finally*, as discussed above, at least one Tennessee resident, Mace's Towing, ordered from NRC before the filing date of this lawsuit a CSR rotator, with the intent to include the accused

---

[9] In any event, it is certainly not clear, as NRC asserts (NRC Brf. at 13), that "[n]one of the allegedly infringing activities in this case occurred in Tennessee." At a minimum, discovery is needed to investigate this. As one court has stated, while averments similar to those made in the Pigeon Declaration (i.e., that NRC does not own property in Tennessee or have employees here) "may show that [the defendant] is not at home in [the forum], the absence of these contacts would not alone preclude the exercise of specific jurisdiction." *Am. GNC Corp.*, 2018 U.S. Dist. LEXIS 192256, *8 n.3.

10

infringing feature when it is delivered, currently scheduled for later this year (Ex. A, Hawkins Dec., ¶5). *See Pfaff v. Wells Elecs., Inc.,* 525 U.S. 55, 67-68 n. 14 (1998) (product need not exist to be "on sale" if it has already been developed). "In a patent infringement case, specific jurisdiction over a foreign defendant may be proper if the defendant sells the infringing item to customers in the forum state." *WesternGeco LLC v. Ion Geophysical Corp.*, 776 F. Supp. 2d 342, 356 (S.D. Tex. 2011) (citing cases). Further, "[i]t has been held that even a single contact with a forum state [such as a single sale to a customer located in the forum state] may suffice for specific personal jurisdiction if it is directly and substantially related to the plaintiff's claim." *HTC Sweden AB v. Innovatech Prods. & Equip. Co.*, 2010 U.S. Dist. LEXIS 52124, *26 (E.D. Tenn. May 27, 2010) (citing cases). As Judge Varlan said in *HTC Sweden AB v. Innovatech,* 2010 U.S. Dist. LEXIS 52124 (E.D. Tenn. May, 27, 2010), "[t]he sale to customers in Tennessee of products covered by a patent at issue in this litigation would, to this Court, constitute purposeful availment for purposes of [a patent holder's] assertion that personal jurisdiction may be exercised over [the defendant] in this Court." *Id.* at 27; *see also Gibson Brands, Inc. v. Tronical Components GmbH,* 2018 U.S. Dist. LEXIS 168052, *67 (M.D. Tenn. Sept. 28, 2018) ("voluntarily agreeing to deliver goods to the forum state directs the defendant's actions into the forum state and provides fair warning that it may have to defend a lawsuit there").

This case involves the sale of a vehicle that costs upwards of $400,000 (Ex. A, Hawkins Dec., ¶¶4-5), which is why a single sale is certainly sufficient. *See Silva v. Pavlak*, 2018 U.S. Dist. LEXIS 170925, *11 (W.D.N.C. Oct. 3, 2018) ("Generally, the commission of a single tortious act is sufficient."). Therefore, NRC's single sale of a wrecker to a customer in Tennessee--one that the Tennessee customer intends will include the infringing product--is by itself, without consideration of any of the other contacts discussed above, sufficient to establish minimum

11

contacts in this case. *See Beverly Hills Fan Co.*, 21 F.3d at 1565 (noting two cases where one-time sales of substantial monetary amounts (37K and 25K) in the forum state were sufficient for personal jurisdiction).[10]

## 2.  Subjecting NRC to Tennessee jurisdiction is reasonable/fair

Because NRC's conduct was purposefully directed at Tennessee and MITE's claim of patent infringement arises out of those contacts, the burden now shifts to NRC to present a "'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *M-I Drilling Fluids UK Ltd.*, 890 F.3d at 1000 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). In determining whether the exercise of specific personal jurisdiction over a defendant would be reasonable and fair, the Federal Circuit considers the five *Burger King* factors: "(1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the states in furthering fundamental substantive social policies." *Id.*

---

[10] NRC argues it has not "made, used, sold, or offered to sell a single accused product in Tennessee" (NRC Br. at 12 (Dkt 34). But this statement appears to be deliberately ambiguous, as it is impossible to know what NRC means when it says "in Tennessee." Pigeon's carefully worded declaration stating that NRC "has not sold (directly or indirectly) any products containing the accused wrecker controls into the state of Tennessee" (*id.*), is insufficient to refute Hawkins' testimony that a Tennessee resident – Mace's Towing – has ordered and is expecting delivery in perhaps the next 6 months of an NRC vehicle that the customer has stated will include the infringing product. *See supra* n. 5 (citing *Am. GNC Corp.* for the proposition that conflicts in declarations must be resolved in favor of the plaintiff). Perhaps NRC thinks it does not have to disclose its sale to Tennessee resident Mace's Towing because the wrecker will not be delivered until after the complaint was filed. But that view would be in error. *See Beverly Hills Fan Co.*, 21 F.3d at 1563 (patent infringement is a continuing tort). Or perhaps NRC believes it can avoid disclosing the sale because it occurred indirectly through a distributor. But that view too would be in error. *See id.* at 1562-63 (discussing "stream of commerce" theory of jurisdiction, which holds that the purposeful shipment of accused products into a forum state through an established distribution channel is sufficient to establish specific jurisdiction).

12

While NRC may be burdened by having to litigate in a foreign forum, courts have held that "progress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome." *Synthes,* 563 F.3d at 1300. This Court's interest in adjudicating the dispute, on the other hand, is strong, given that MITE is a resident of this state, and the records and witnesses pertaining to the invention development reside here. *WesternGeco LLC*, 776 F. Supp. 2d at 361 (observing that an in-state resident has a "high level of interest" in obtaining relief in state where he resides). MITE's interest in obtaining convenient and effective relief also is furthered by this Court's exercise of personal jurisdiction over NRC. *Id.* (the forum state "possesses an interest in [the] dispute [where] the alleged patent infringement has harmed ... a resident of the state"). The final two considerations are not relevant since this case does not involve a citizen of any other state. Thus, even assuming that the first factor somewhat favors NRC, the second factor strongly favors MITE, and overall the factors favor MITE. *See N. Am. Philips Corp. v. Am. Vending Sales, Inc.*, 35 F.3d 1576, 1580 (Fed. Cir. 1994) (the forum "clearly has an interest in prohibiting the importation of infringing articles into its territory"); *Beverly Hills Fan*, 21 F.3d at 1568 (finding that the forum's interest in discouraging injuries within its territory extends to patent infringement actions). Accordingly, NRC has not met its burden of demonstrating a "compelling case" such that the exercise of personal jurisdiction would be unfair under *Burger King*. This is "not one of those 'rare cases' in which fair play and substantial justice defeat the reasonableness of a U.S. court exercising personal jurisdiction over a defendant." *See M-I Drilling*, 890 F.3d at 1003; *Akro Corp.*, 45 F.3d at 1549; *Serv. Solutions,* 2013 U.S. Dist. LEXIS 150036, *15-17; *BOS GmbH & Co KG v. Macauto USA, Inc.*, 2017 U.S. Dist. LEXIS 209942, *12-14 (E.D. Mich. Dec. 21, 2017); *Silva*, 2013 U.S. Dist. LEXIS 150036, *11-12; *Agis Software*

13

*Dev. LLC,* 2018 U.S. Dist. LEXIS 167029*, *17-18; *Am. GNC Corp.*, 2018 U.S. Dist. LEXIS 192256, *31-35.

## B.  Jurisdiction In This Court Is Proper Under Rule 4(k)(2)

Alternatively, personal jurisdiction here is proper under FRCP 4(k)(2), which allows for federal jurisdiction with respect to claims arising under federal law if: (1) the defendant is served, (2) the exercise of jurisdiction complies with the 5th Amendment's due process clause, and (3) the defendant is not subject to the jurisdiction of the courts of general jurisdiction of any state.  *Merial Ltd. v. Cipla Ltd.,* 681 F.3d 1283, 1296 (Fed. Cir. 2012).[11]  This rule was adopted to close a loophole that previously existed when a defendant claimed not to have sufficient minimum contacts with any one state.  *Id.; see* FRCP 4(k)(2), Advisory Committee Notes.

The first requirement for Rule 4(k)(2) to apply, that the plaintiff's claim arises under federal law, is met here: where federal patent law creates the cause of action, the claims arise under federal law for purposes of Rule 4(k)(2).  *Touchcom,* 574 F.3d at 1413 (citing 28 U.S.C. § 1338); *see also Synthes,* 563 F.3d at 1296.

The second requirement is called the "negation requirement."  For Rule 4(k)(2) to apply, the defendant must *not* be subject to personal jurisdiction in any state courts of general jurisdiction. In *Synthes,* the Federal Circuit recognized that determining whether this requirement has been met "poses practical difficulties for a district court."  *Synthes*, 563 F.3d at 1294.  As the *Synthes* court explained:

> Ordinarily, the plaintiff bears the burden of proof as to whether the defendant is subject to personal jurisdiction.  Thus, under the second Rule 4(k)(2) requirement, the plaintiff's burden would be to prove that the defendant is not subject to jurisdiction in any of the fifty states.  Proving the lack of personal jurisdiction in every state could be quite onerous, especially since the defendant, and not the plaintiff, oftentimes

---

[11] MITE is permitted to argue alternative theories of jurisdiction, even if those theories are conflicting.  *See Am. GNC Corp., supra,* 2018 U.S. Dist. LEXIS 192256, *8 n.3.

14

possesses the necessary information to do so. However, assigning the burden to the defendant forces the defendant to choose between conceding its potential amenability to suit in federal court or conceding amenability to suit in some identified state court.

*Id.* (citations omitted). In *Touchcom*, 574 F.3d at 1411, the Federal Circuit placed the burden on the *defendant* to designate a suitable forum in which the suit can proceed. *Id*. at 1414-15. The rationale for this rule is that if the "defendant contends that he cannot be sued in the forum state and refuses to identify any other state where suit is possible, then the federal court is entitled to use Rule 4(k)(2). *Id.* This procedure "makes it unnecessary to traipse through the 50 states, asking whether each could entertain the suit." *Id.* at 1414, quoting *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001). Thus, the Federal Circuit holds that the federal court is entitled to use Rule 4(k)(2) where a defendant contends it cannot be sued in the forum state and fails to concede jurisdiction in another state. *Touchcom,* 574 F.3d at 1415; *see also Bradford Co. v. Conteyor N. Am., Inc*., 603 F.3d 1262, 1272-73 (Fed. Cir. 2010) (reversing for consideration of personal jurisdiction under Rule 4(k)(2) where the defendant challenged jurisdiction in the forum state, but did not concede jurisdiction in another state). That is arguably the situation here, as NRC in its Motion fails to concede personal jurisdiction in *any* state. Therefore, the Court may base its jurisdictional analysis on Rule 4(k)(2).[12]

_____

[12] On the day this brief was filed, NRC informed MITE of its position that "Rule 4(k)(2) is not implicated because NRC has already confirmed personal jurisdiction over NRC exists in the District of New Jersey" by virtue of a single sale. Ex. E (June 10, 2019 email). But NRC waived this argument by failing to raise it in its opening brief. If the Court permits NRC to make such a claim notwithstanding its waiver then, at the very least, the Court should require NRC to disclose to MITE the other states in which it has made sales of the infringing product (as MITE pointed out to NRC and counsel for MITE confirmed, the Pigeon declaration leaves open the possibility that such sales have occurred, *see* Dkt 35, ¶8). The purpose for such a disclosure is to allow MITE to choose the alternative forum to which it would request this Court to transfer the case to pursuant to 28 U.S.C. §1404, should the Court find that personal jurisdiction over NRC in Tennessee is not available under Rule 4(k)(1)(A), based on NRC's apparent concession of personal jurisdiction over it in any forum where there has been at least one sale of the infringing product. *See In re Barnes & Noble, Inc.,* 743 F.3d 1381, 1383 (Fed. Cir. 2014) ("'[u]nless the balance is

15

The third requirement under Rule 4(k)(2), the due process analysis, contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits. "The rubric for analyzing personal jurisdiction . . . is no different than that under Rule 4(k)(1). All that differs is the scope – nationwide rather than statewide – of the contacts under consideration." *De Simone v. VSL Pharms., Inc.*, 2017 U.S. Dist. LEXIS 22589, *25 (D. Md. Feb. 16, 2017). NRC's concession of a sale of the infringing product in New Jersey (and possibly other states as well) establishes that due process has been met based on NRC's contacts with the U.S. as a whole. *See, e.g., Am. GNC Corp.*, 2018 U.S. Dist. LEXIS 192256, *17-28.

Apart from sales of the infringing product in the U.S., NRC's activities at the 2018 Baltimore and 2019 Florida trade shows also establish jurisdiction under Rule 4(k)(2). Here, *Synthes* is directly on point. In *Synthes,* a U.S. plaintiff sued a Brazilian company, GMReis, which had no office, subsidiary, or licensee in the U.S. 563 F.3d at 1289. Nevertheless, the Federal Circuit held that if a foreign entity "brings allegedly infringing products to a trade show, we do not see the Due Process Clause of the Fifth Amendment standing in the way of a district court's exercise of jurisdiction over the party." *Id.* at 1300. As to the inquiry of whether the court's assertion of jurisdiction over the foreign defendant was fair and reasonable, the *Synthes* court held that any burden on GMReis was "sufficiently outweighed by the interest of the United States in adjudicating the dispute and the interest of Synthes [the patent owner] in obtaining effective and convenient relief, the second and third due process factors." *Id.* at 1299. Further, the court held that the United States has a "substantial interest" in enforcing the federal patent laws." *Id.*; *see also M-I Drilling Fluids UK Ltd.*, 890 F.3d at 100 (where the injured patent holder "is a U.S.

---

strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed,'" citing *Reese v. CNH America LLC*, 574 F.3d 315, 320 (6th Cir. 2009)).

domiciliary, it has a *paramount interest* in obtaining convenient and effective relief in a U.S. court"; holding that because the plaintiff was a U.S. resident trying to enforce its U.S. patents for alleged infringing activity in a U.S. territory, "the first three factors [of the fairness test] strongly favor exercising specific personal jurisdiction over [the foreign national]") (emphasis added).

The fourth and the fifth due process factors "are concerned with the potential clash of substantive social policies between competing fora and the efficiency of a resolution to the controversy." *Synthes*, 563 F.3d at 1300. "But the forum here is the entire United States, so no competing U.S. forum is available to [MITE] for its infringement claims…. And to the extent [the Federal Court] give[s] any weight to the procedural and substantive interests of other nations in the context of Rule 4(k)(2), '[it] [has said that it has "no reason to believe that the Federal Government's interest in its foreign relations policies' with [that foreign country] will be hindered by allowing the district court to exercise personal jurisdiction." *M-I Drilling,* 890 F.3d at 1001, quoting *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 115 (1987); *see also WesternGeco LLC*, 776 F. Supp. 2d at 361 (holding that neither the interstate judicial system's interest nor the shared interest of several states were factors present in a case involving a foreign defendant). Accordingly, NRC cannot meet its burden of showing that this Court's assertion of personal jurisdiction over it would be unfair or unreasonable, and this Court can assert personal jurisdiction over NRC based on its aggregate contacts with the United States.[13]

---

[13] Because MITE has established that the Court may exercise specific jurisdiction over NRC on the basis of the record before the Court under either Rule 4(k)(1)(A) or Rule 4(k)(2), MITE believes that jurisdictional discovery is unnecessary. At the very least, however, MITE has made a threshold showing of personal jurisdiction such that if the Court were to conclude that the present record is insufficient to show jurisdiction over NRC, it should stay its ruling on the issue for a reasonable period to allow jurisdictional discovery followed by supplemental briefing. For this reason, MITE has filed contemporaneous with this response brief, an alternative motion to compel jurisdictional discovery. *See Synthes,* 563 F.3d at 1290 (a district court may permit jurisdictional discovery).

17

## IV.   NRC IS NOT ENTITLED TO DISMISSAL
##       OF THE COMPLAINT UNDER RULE 12(b)(6)

The Complaint alleges that the controls offered as an option on NRC's towing equipment, as identified in attachments to the Complaint, infringe various claims of a utility patent (the '577 Patent) and two design patents (the '963 Patent and the '492 Patent), all of which are owned by MITE.  NRC has moved to dismiss the complaint under Rule 12(b)(6), asserting failure to plausibly allege infringement of the patents-in-suit by the accused products.  Dkt 34 at 15-24. Yet NRC completely ignores the Complaint's allegations, and relies exclusively on matters outside the complaint, specifically, (1) the Pigeon declaration (Dkt 35); (2) photographs of the infringing product attached to the Pigeon declaration as Exhibit A, Pigeon Dec., ¶¶9, 10 (Dkt 35, 35-1); and (3) a video clip showing the accused product, attached to the Pigeon declaration as Exhibit B, Pigeon Dec., ¶¶11, 12 (Dkt #35, 35-2).

### A.   MITE Plausibly Alleges Infringement Of The '577 Utility Patent

NRC asks the Court to make a substantive ruling that MITE's claims are "*refuted*" by matters external to the complaint, even though a motion to dismiss is based on the *pleadings* and reference to matters outside the complaint (with few exceptions, none of which NRC cites) is improper.  *See Stien v. Hhgregg, Inc.*, 873 F.3d 523, 528 (6th Cir. 2017).  NRC's Rule 12(b)(6) motion is merely an inadequate Rule 56 motion, which should be summarily denied as procedurally improper.

NRC's Rule 12(b)(6) suffers from a second material defect as well.  NRC misleadingly cites *Filter Plus, Inc. v. O R Co. & Surgical Principals,* 2017 U.S. Dist. LEXIS 26792, *8-9 (E.D. Mich. Feb. 27, 2017) (Dkt. 34 at 15), regarding the plausibility requirement of *Iqbal/Twombley* as applied to patent infringement claims.  But the *Filter Plus* court expressly *rejected* a Rule 12(b)(6) motion for a reason also applicable here – the argument made in the motion to dismiss would have

18

required the court to engage in claim interpretation at the pleading stage, something the court declined to do:

> The court declines to engage in a lengthy analysis of the merits of Plaintiff's implicit construction at this time—such an issue is more appropriately reserved for a full hearing on the meaning of claim language.

*Id.* at 8, citing *Markman v. Westview Instr., Inc.*, 517 U.S. 370 (1996). Here, as well, NRC's argument for dismissal of MITE's infringement claim as to the '577 Patent depends entirely on *NRC's* view that claim 1 of the '577 Patent requires the control panel to be co-extensive with the door that closes off the interior compartment. *See* NRC Brf. 15-16 (arguing that claim 1 "does not require a door that closes off the interior compartment, it requires *the control panel to close off the interior compartment"*) (emphasis in original). With that implicit claim construction, NRC argues that the infringing product does not meet that claim element because it contains "a traditional door found on virtually all prior art devices" (Dkt 38 at 16), not one that closes off the interior compartment. In fact, NRC's entire argument for dismissal under 12(b)(6) is summed up at page 16 of NRC's brief, where NRC asserts: "Because the door – not the control panel – closes off the interior compartment [facts outside the complaint], Miller has not and cannot plausibly allege infringement of claim 1 [substantive argument of non-infringement based on *NRC's* view of claim construction, *not* a plausibility argument]." Based on *NRC's* interpretation of the claim language, NRC asks the Court to find as a matter of law with reference to *extrinsic evidence* – evidence that NRC has carefully selected to bring to the Court's attention and that MITE has had no opportunity to challenge or cross-examine NRC about – that there is no infringement.

Further, and fundamentally, NRC's proposed claim construction, which would require that the door to the interior compartment be co-extensive with the door that closes off the control panel, is incorrect. Claim 1 of the '577 Patent (Dkt. 1-1, Ex. 1) recites a "wrecker-type recovery vehicle

for recovering other, disabled vehicles, comprising" (8:29-30), in relevant part, a vehicle with "wrecker controls configured to control movement of one or more wrecker components useful in vehicle recovery" (8:37-39), wherein:

    a.    the controls are "located on and supported by a control panel" (8:34-35);

    b.    the control panel is "stored within an interior compartment of the wrecker (8:35-36);

    c.    the control panel is "moveable from a first, storage position within the interior compartment of the vehicle body [8:41-42] . . . to a second, operable position displaced from and outside the compartment and remote from the vehicle exterior, in a direction perpendicular to the longitudinal axis [8:43-48)]"; and

    d.    when the control panel is in the "first, storage position, within the interior compartment of the vehicle body" (8:41-42), it is "operable to close off the interior compartment from an operator of the wrecker controls" (8:43-45).

Presumably (although NRC does not explain), NRC is relying for its claim construction on paragraph d, above, which describes a "control panel in the first [storage] position" (8:43), which "is operable to close off the interior compartment from an operator of the wrecker controls" (8:43-45). However, the Court can readily see from dependent claim 3 of the '577 Patent that NRC's proposed construction – that the control panel cannot include the door – must be incorrect, since claim 3 recites that the control panel *includes* a door (*id.*, 9:4-5).

Instead of requiring that the compartment door and the control panel be separate items, claim 1 recites only that, so long as the interior compartment may be closed off from the operator of the vehicle in some manner when the control panel is stored in the first position, this claim element is satisfied (e.g., by a door affixed to the operator control console, or by a door separate from the operator control console, but in either event still part of the "control panel"). This interpretation is supported by the specification, which describes one embodiment of the invention as consisting of wrecker controls "located on an outwardly-opening door associated with the a

20

compartment located within an interior of the vehicle" (2:4-6), while also describing an alternative preferred embodiment consisting of wrecker controls "located on an outwardly-sliding shelf [separate from the door] within a compartment located within an interior of the vehicle" (2:7-9).

The prosecution history supports *MITE's* proposed claim construction, not NRC's (which is likely why NRC does not mention it, even though it cites to other matters outside the complaint). That history shows that the language in question was added to the '577 Patent at the suggestion of the Examiner to overcome prior art. The Examiner suggested distinguishing the prior art by adding a claim element "based on structural aspects of the Applicant's invention . . . such as [a] door . . . which supports the wrecker controls and closes the compartment." (Ex. D, Interview Summary dated 7/26/2016). The Examiner's phrasing makes clear that the intention of the amendment was to have a door that supports the controls and that also closes off the compartment. Nothing would require, however, that the "door" and the "control panel" be one and the same.[14]

As the *Filter Plus* court explained in rejecting the defendants' motion to dismiss there:

> The standard for a motion to dismiss is forgiving. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556. Plaintiff has pointed to an accused infringing product, identified the claim at issue, provided a claim chart that maps the limitations of its claim to features of the accused product, and alleges facts to suggest Defendants had notice of the patent. Plaintiff's implicit interpretation of "each partition including a gap," based on the complaint and the exhibits attached thereto, is at least "plausible" within the meaning of *Twombly*, 550 U.S. at 570. As a result, Rule 12(b)(6) dismissal is not available. *Id.*

---

[14] NRC also challenges MITE's pleading of infringement as to claim 16, asserting that claim 16, like claim 1, also requires that the control panel be one and the same as the door. But claim 16 is even more supportive of MITE's position, as it does *not* recite that *the control panel* closes off the interior compartment. Instead, it uses the term "comprising" – meaning "including *but not limited to*" – "… an outwardly-opening door associated with the interior compartment accessible from an exterior of the vehicle, and wherein when the door is closed a closed interior compartment is provided, and when the door is open this exposes the wrecker controls to operator manipulation" (Dkt 1-1, '577 Patent, 10:30-36). This language clearly accounts for configurations where the control panel and the exterior door that closes off the interior compartment are one and the same, as well as for configurations where they are not.

21

*Id.* at 8-9.

NRC also cites to *North Star Innovations, Inc. v. Micron Tech., Inc.*, 2017 U.S. Dist. LEXIS 189624, 2017 WL 5501489, *2 (D. Del. Nov. 16, 2017), for the proposition that a "patentee cannot meet its obligation to assert a plausible claim of infringement under the *Twombly/Iqbal* standard by merely copying the language of a claim element, and then baldly stating (without more) that an accused product has such an element." Dkt. 34 at 15. *North Star* is easily distinguishable, however, as its complaint "contained no factual description of the infringing product, ... [u]nlike the complaint here." *Holotouch, Inc. v. Microsoft Corp.*, 2018 U.S. Dist. LEXIS 84152, *19 (S.D.N.Y. May 18, 2018); *see also Noco Co. v. Shenzhen Valuelink E-Commerce Co.*, 2018 U.S. Dist. LEXIS 108336, *10 (N.D. Ohio June 28, 2018) ("Plaintiff's Complaint contains significantly more detail than the complaint[] at issue [in *North Star*]"). As the *Holotouch* court noted, *North Star* does "not … create an 'anti-parroting' principle, and there is nothing inherently problematic about quoting the language of an allegedly infringed patent. And more fundamentally, in reviewing the sufficiency of the pleadings under Rule 12(b)(6) [the court] must review the complaint on its own terms. This is an individualized inquiry that is principally concerned with giving a defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.' *Twombly*, 550 U.S. at 555 (internal quotation marks omitted)." *Holotouch,* 2018 U.S. Dist. LEXIS 84152, *19-20.[15]

---

[15] To the extent that NRC is arguing that the complaint fails to allege that the accused products perform each and every element of each claim asserted to be infringed, NRC itself acknowledges that MITE only has to allege that the accused product practices each of the limitations found in at least *one* asserted claim. NRC Br. at 15 (quoting *Filter Plus, supra*). Also, because MITE has alleged a plausible claim of infringement regarding independent Claims 1 and 16, it has alleged a plausible claim of infringement of dependent claims 2-3, 6-8, 11, 13, 17, and 20 as well, which NRC does not separately challenge.

**B.      MITE Plausibly Alleges Infringement
Of The '963 and '492 Design Patents**

Regarding MITE's two design patents, NRC points to specific aspects of the design of

NRC's product which it claims are different from MITE's patented designs.  But the existence of

"some dissimilarities between the claimed design and the accused design" is not sufficient by itself

to defeat a design patent infringement claim.  *Five Star Gourmet Foods, Inc. v. Ready Pac Foods,

Inc.,* 2019 U.S. Dist. LEXIS 45238, *8 (C.D. Cal. Mar. 18, 2019).  Instead, "[a] design patent is

infringed if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives,

two designs are substantially the same, if the resemblance is such as to deceive such an observer,

inducing him to purchase one supposing it to be the other."  *Ethicon Endo-Surgery, Inc. v.

Covidien, Inc.,* 796 F.3d 1312, 1335 (Fed. Cir. 2015) (quoting *Egyptian Goddess, Inc. v. Swisa,

Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008) (*en banc*) (adopting test set forth in *Gorham Co. v. White*,

81 U.S. 511, 528 (1872)*, as sole test for design patent infringement)).   In making this

determination, differences between the patented design and the claimed design "must be evaluated

in the context of the clamed design as a whole, and not in the content of separate elements in

isolation."  *Id.*   Thus, "[a]n element-by-element comparison, untethered from application of the

ordinary observer inquiry to the overall design, is procedural error."  *Id.; see also Payless

Shoesource, Inc. v. Reebok Int'l, Ltd.,* 998 F.2d 985, 991 (Fed. Cir. 1993) (explaining that, because

the "ultimate question requires determining whether the effect of the whole design is substantially

the same[,] . . . minor differences between a patented design and an accused article's design cannot,

and shall not prevent a finding of infringement" (internal quotation marks omitted)).

The visual similarities between the NRC control panel and MITE's design patents are

enough to raise a factual issue as to whether NCR infringes MITE's design patents.  For example,

each design patent includes drawings (the "claims") with a compartment located on the side of a

rotating wrecker that houses wrecker controls; each includes a hinged door that opens outwardly; and each includes wrecker controls resting on that opened door, with the wrecker controls in an ergonomically-acceptable position for allowing operating control. *See Five Star Gourmet Goods, Inc.*, 2019 U.S. Dist. LEXIS 45238, *6 ("Courts ordinarily do not dismiss a sufficiently pled patent design infringement claim based on a comparison of the subject designs, unless the claimed design and accused product are so plainly dissimilar that it is implausible that an ordinary observer would confuse them." (internal quotation marks and citations omitted)).

MITE's design patent infringement claims cannot be said to be facially implausible for another important reason that NRC fails to address. As the Federal Circuit has explained, "[t]he context in which the claimed and accused designs are compared, i.e., the background prior art, provides such a frame of reference and is therefore often useful in the process of comparison. Where the frame of reference consists of numerous similar prior art, those designs can highlight the distinctions between the claimed design and the accused design as viewed by the ordinary observer." *Egyptian Goddess,* 543 F.3d at 676-78. In other words, where "'a field is crowded with many references relating to the design of the same type of appliance, [the Court] must construe the range of equivalents very narrowly'"; [a]ccordingly, the court held that the scope of protection of the [design] patent in that case was limited to 'a narrow range.'" *Id.* at 675-76 (analyzing and citing *Litton Sys. v. Whirlpool Corp.*, 728 F.2d 1423, 1444 (Fed. Cir. 1984)). Here, however, the opposite is true— there are limited (if any) relevant prior art designs, and the claims (drawings) in MITE's design patents are not similar to the prior art. As a result, the scope of MITE's design patent should be construed more broadly such that a finding of infringement of MITE's design would be justified even if NRC's design is not identical.

24

## V.    __CONCLUSION__

For the foregoing reasons, MITE respectfully requests that the Court deny NRC's motion to dismiss or, at a minimum, order jurisdictional discovery as specifically requested in the concurrently-filed motion for same.

Dated: June 10, 2019                              Respectfully submitted,

*/s/ Michael P. Mazza*
Michael P. Mazza, Ill. Bar No. 6201609
Lynn D. Moffa, Ill. Bar No. 6197181
Paul R. Hale, Ill. Bar No. 6320732
**MICHAEL P. MAZZA, LLC**
686 Crescent Blvd.
Glen Ellyn, IL 60137
Phone: 630-858-5071
Fax: 630-282-7123
Email: mazza@mazzallc.com
        lynn@mazzallc.com
        paul@mazzall.com

Illinois ARDC
Chicago Office
One Prudential Plaza
130 E. Randolph Dr., Suite 1500
Chicago, IL 60601-621
Phone (312) 565-2600
Main Fax (312) 565-2320

*/s/ Gary R. Patrick*
Gary R. Patrick
**PATRICK, BEARD, SCHULMAN & JACOWAY, P.C.**
Suite 202, Market Court
537 Market Street
Chattanooga, TN 37402
423/756-7117 office
423/267-5032 facsimile
*gpatrick@pbsjlaw.com*

**Attorneys for Plaintiff**
**Miller Industries Towing Equipment Inc.**

25

## CERTIFICATE OF SERVICE

The undersigned certifies that all counsel of record who have consented to electronic service are being served with a copy of the foregoing via electronic ECF mail on June 10, 2019.

/s/ Paul R. Hale