**THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE, CHATTANOOGA DIVISION**

Miller Industries Towing Equipment Inc.

     Plaintiff,

     v.

NRC Industries

     Defendant.

Case No.: 1:19-cv-00095-PLR-SKL

Hon. Pamela L. Reeves

**DEFENDANT NRC INDUSTRIES' REPLY BRIEF IN SUPPORT OF ITS
RULE 12(b)(2) AND 12(b)(6) MOTIONS TO DISMISS**

# TABLE OF CONTENTS

I.    MILLER CANNOT ESTABLISH THAT THIS COURT HAS PERSONAL
JURISDICTION OVER NRC ..............................................................................1

     A.    NRC's Nationwide Sales Efforts Are Not Purposefully Directed
at Tennessee and Do Not Support Jurisdiction .......................................................1

          1.    NRC's website use cannot establish purposeful availment where the
websites do not specifically target customers in Tennessee .......................2

          2.    NRC's trade show attendance and nationally distributed advertisements
do not constitute purposeful availment of the forum state..........................4

     B.    NRC Has Not Sold Any Accused Products into Tennessee, Not
Even Indirectly through a "Stream of Commerce"...................................................6

     C.    Rule 4(k)(2) Does Not Apply to the Present Case ...................................................8

     D.    Exercising Personal Jurisdiction Over NRC is Not Fair or Reasonable .................9

II.    MILLER'S ALLEGATIONS ARE INSUFFICIENT TO SURVIVE
A MOTION TO DISMISS UNDER RULE 12(b)(6) ....................................................10

     A.    Miller Fails to Plausibly Allege Infringement of U.S. Patent No. 9,440,577........10

          1.    No claim construction is required to find that NRC does not
infringe claim 1 ........................................................................................10

          2.    No claim construction is required to find that NRC does not
infringe claim 16 ......................................................................................12

          3.    Miller fails to plausibly allege infringement of any asserted claims .........13

          4.    NRC's extrinsic evidence is not required to support dismissal .................13

     B.    Miller Fails to Plausibly Allege Infringement of the Asserted Design Patents .....15

CONCLUSION.....................................................................................................17

# TABLE OF AUTHORITIES

**Cases**

*AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358 (Fed. Cir. 2012) ................................ 7, 8

*Agis Software Dev. V. HTC Corp., No. 2:17-cv-00515,*
    2018 U.S. Dist. LEXIS 167029 (E.D. Tex. Sept. 28, 2018) ............................ 7

*Alisoglu v. Cent. States Thermo King of Okla., Inc., No. 12-cv-10230,*
    2012 U.S. Dist. LEXIS 66246 (E.D. Mich. May 11, 2012) ............................. 3

*Anderson v. Kimberly-Clark Corp.*, 570 Fed. Appx. 927 (Fed. Cir. 2014) ................................ 16

*Asahi Metal Industry Co. v. Superior Court of California,*
    480 U.S. 102 (1987)....................................................................................7

*Autogenomics Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012 (Fed. Cir. 2009) .......................... 5

*Bailey v. City of Ann Arbor*, 860 F.3d 382 (6th Cir. 2017) ......................................................... 14

*Beverly Hills Fan Co. v. Royal Sovereign Corp.,*
    21 F.3d 1558 (Fed. Cir. 1994) ............................................................7

*Blitzsafe Tex., LLC v. Bayerische Motoren Werke AG,* No. 2:17-cv-00418,
    2018 U.S. Dist. LEXIS 173065 (E.D. Tex. Sept. 5, 2018) .............................. 7

*Cadle Co. v. Schlichtmann*, 123 Fed. Appx. 675 (6th Cir. 2005)................................................. 3

*Cotapaxi Custom Design & Mfg., LLC v. Corporate Edge, Inc.,*
    No. 06-5183, 2007 U.S. Dist. LEXIS 73172 (D.N.J. Sept. 28, 2007) ............................ 16

*Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414 (9th Cir. 1997) ......................................................2

*Digital Filing Sys. v. Frontier Consulting, Inc.,* No. 05-74753,
    2006 U.S. Dist. LEXIS 38877 (E.D. Mich. June 13, 2006) .............................. 3

*Ford Global Techs., LLC v. New World Int'l,* No. 2:15-cv-10394,
    2016 U.S. Dist. LEXIS 78384 (E.D. Mich.) ...................................................... 8

*Foshee v. Forethought*, No. 09-2674,
    2010 U.S. Dist. LEXIS 51296 (W.D. Tenn. May 7, 2010) .............................. 6

*Grober v. Mako Products*, 686 F.3d 1335 (Fed. Cir. 2012) .........................................................4

*Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009) ....................................... 13

*Maynard v. Phila Cervical Collar Co.*, 18 Fed. Appx. 814 (Fed. Cir. 2001) ........................... 2, 4

ii

*Medical Solutions, Inc. v. Change Surgical LLC,*
  541 F.3d 1136 (Fed. Cir. 2008)................................................................5

*Mink v. AAA Dev. LLC*, 190 F.3d 333 (5th Cir. 1999)....................................................2

*NexLearn v. Allen Interactions, Inc.*, 859 F.3d 1371 (Fed. Cir. 2017) .......................................... 3, 4

*OurPet's Co. v. Iris USA, Inc.,* No. 1:34-cv-1642, 2015
  U.S. Dist. LEXIS 185150 (N.D. Ohio Mar. 23, 2015) .................................................... 16

*Serv. Solutions, U.S., LLC v. Autel US Inc.*, No. 13-10534,
  2013 U.S. Dist. LEXIS 150036 (E.D. Mich. October 18, 2013) .........................................8

*Sport Dimension, Inc. v. Coleman, Co.*, 820 F.3d 1316 (Fed. Cir. 2016) .................................... 17

*State Indus. v. Beckett Gas, Inc.*, 200 F.R.D. 392 (M.D. Tenn. 2001) .......................................... 8

*Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403 (Fed. Cir. 2009) .......................................... 9

*Weiner v. Klais & Co.*, 108 F.3d 86 (6th Cir. 1997) .................................................... 14

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ................................................ 5

iii

Miller Industries Towing Equipment Inc. ("Miller") has failed to identify any relevant contacts—much less purposeful contacts—that NRC Industries ("NRC") has with Tennessee and the Court must dismiss this case for lack of personal jurisdiction. In addition, Miller continues to lack a plausible allegation that NRC's control panel closes off a compartment or "comprises" a door, and the accused product and the claimed designs of the design patents are plainly dissimilar. Accordingly, the Court should also dismiss this case for failure to state a claim of infringement upon which relief can be granted.

## I.    MILLER CANNOT ESTABLISH THAT THIS COURT HAS PERSONAL JURISDICTION OVER NRC

To support its claim that this Court has personal jurisdiction over NRC, Miller relies on (1) nationwide marketing efforts that do not show any purposeful efforts to exploit the forum, and (2) hearsay evidence of an alleged order made by an attendee of a (post-Complaint) Florida trade show with a third-party distributor of NRC. But no such sale or order has been made, and neither of these bases support the assertion of jurisdiction. They also fail to support Miller's demands for jurisdictional discovery.[1]

### A.    NRC's Nationwide Sales Efforts Are Not Purposefully Directed at Tennessee and Do Not Support Jurisdiction

Miller argues that NRC purposefully availed itself of the benefits and protections of the state of Tennessee via three separate activities: (1) use of "nationally accessible" websites to market its accused products, Dkt. 38 at 5-6; (2) advertising to potential customers through major trade magazines such as *Tow Times* and *American Towman*, *id.* at 6; and (3) attending U.S-based trade shows outside of Tennessee, *id.* at 8. None of these activities support jurisdiction.

---

[1] NRC will separately respond to Miller's motion for jurisdictional discovery, but as set forth herein Miller has failed to raise any plausible theories for personal jurisdiction sufficient to support such a request.

1

### 1. NRC's website use cannot establish purposeful availment where the websites do not specifically target customers in Tennessee

Neither NRC's website nor videos it posted on YouTube® are specifically directed to customers in the forum state, and cannot establish purposeful availment required to support jurisdiction.

As a matter of law, passive websites cannot establish purposeful availment. *Maynard v. Phila Cervical Collar Co.*, 18 Fed. Appx. 814, 816-17 (Fed. Cir. 2001) (citing *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419-20 (9th Cir. 1997); *Mink v. AAA Dev. LLC*, 190 F.3d 333, 336-37 (5th Cir. 1999) (a website is passive even though it posts information regarding a company's products and services, provides the user with printable forms, and displays the company's contact information)).

2

NRC's website is passive: customers can browse the website to see NRC's products, to learn more about the company, or to find a distributor near them. NRC INDUSTRIES, www.nrc-industries.com (last visited June 13, 2019). Customers cannot place orders on the website, and the website does not target customers from any specific states. *Id*. Even if orders could be placed through the website, the accused controls are not pictured on the website.[2] *Id*.

Even if NRC's website was interactive, the Federal Circuit has held that interactive websites are not sufficient to establish personal jurisdiction. "[I]t cannot be that the mere existence of an interactive website, like the existence of an out-of-state store, is 'suit-related conduct . . . . creating a substantial connection with the forum state." *NexLearn v. Allen Interactions, Inc.*, 859 F.3d 1371, 1379 (Fed. Cir. 2017). The court elaborated:

> We evaluate [defendant's] website as we would any other contact under a specific jurisdiction theory; for there to be minimum contacts, there must be evidence that [defendant] purposefully availed itself of [the forum state] and that [plaintiff's] claim arises out of or relates to those contacts. The existence of [defendant's] website, without more, is insufficient to show that [defendant] had minimum contacts with [the forum state].

*Id*. at 1378 (internal citations omitted). Notably, the court held that a "dropdown of all states on its website" was not enough to establish jurisdiction in the forum state, nor was the possibility that a forum state resident "*could* purchase [the accused product] from [defendant's] website, [when there is not] any evidence that such a sale has taken place." *Id*. at 1379 (emphasis in original). NRC's website provides even fewer opportunities for customers to interact, as NRC's website has no purchasing functionality. NRC INDUSTRIES, www.nrc-industries.com (last visited June 13, 2019).

---

[2] Miller claims that NRC's website "advertises its CRC wreckers with the infringing controls . . ." Dkt. 38 at 6. However, none of the screenshots of the website contain images of the accused product, Dkt. 38-2, and review of the NRC website confirms it does not illustrate the accused controls.

3

The cases cited by Miller actually support NRC's position. In fact, every case Miller cites finds that the website failed to confer personal jurisdiction. *Alisoglu v. Cent. States Thermo King of Okla., Inc.*, No. 12-cv-10230, 2012 U.S. Dist. LEXIS 66246, at *16 (E.D. Mich. May 11, 2012) (holding that the websites at issue "provide insufficient basis for personal jurisdiction"); *Cadle Co. v. Schlichtmann*, 123 Fed. Appx. 675, 678 (6th Cir. 2005) ("Because [plaintiff] has not alleged any interaction or exchange of information occurred between [defendant] and a [resident of the forum state] via the website, personal jurisdiction does not exist based on the nature of the website."); *Digital Filing Sys. v. Frontier Consulting, Inc.*, No. 05-74753, 2006 U.S. Dist. LEXIS 38877, at *10-11 (E.D. Mich. June 13, 2006) (stating that where the website "primarily advertises its products and services and provides contact information," the "minimal interactivity does not reveal specifically intended interaction" with the forum residents). Like *NexLearn,* these cases confirm that NRC's website does not support personal jurisdiction.[3]

NRC's use of third-party websites also fails to support jurisdiction. Like NRC's own website, YouTube® is a passive website that does not specifically target customers in the forum state and does not constitute purposeful availment. *Maynard*, 18 Fed. Appx. at 816-17; *NexLearn*, 859 F.3d at 1379.[4]

> ### 2. NRC's trade show attendance and nationally distributed advertisements do not constitute purposeful availment of the forum state

---

[3] Miller asserts that attendance at trade shows and national advertisements in trade magazines constitute "something more" that, when combined with NRC's website, could create purposeful contacts. Dkt. 38 at 7 n. 7. As discussed below, however, none of these actions represent purposeful availment because nothing about these activities targeted Tennessee residents and Miller has not identified a single actual contact, direct or indirect, NRC has with Tennessee that involves the accused controls.

[4] Of the two videos Miller cites, one has nothing to do with the accused product. It was published well before NRC began selling the accused controls, and so does not show or discuss them. Dkt. 38-1 at ¶ 10.

4

Miller's next argument—that NRC's attendance at national trade shows held outside of the forum and advertisements placed in nationally and internationally distributed magazines—also fails to support jurisdiction. Miller does not cite any authority supporting its argument that such activities support jurisdiction. Conversely, in *Grober v. Mako Products*, the Federal Circuit specifically addressed the issue of advertisements in national trade publications that are distributed both within and outside of the forum state. 686 F.3d 1335, 1347 (Fed. Cir. 2012). The court held that even where trade publications are distributed to residents of the forum state, advertisements in those publications cannot establish purposeful availment without evidence showing that the forum market was specifically targeted. *Id*. Miller does not differentiate between NRC and third-party distributors. Regardless, NRC and the third-party distributors have not specifically targeted Tennessee either in trade magazine advertisements, trade show attendance, or through any other means of advertising.[5]

The Federal Circuit takes the same position with respect to industry trade shows. In fact, in *Medical Solutions, Inc. v. Change Surgical LLC*, the court held that even a defendant's attendance of a trade show **in the forum state** cannot confer personal jurisdiction where the defendant has not purposefully engaged in other activities in the forum. 541 F.3d 1136, 1141 (Fed. Cir. 2008); *Autogenomics Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009) (finding defendant's attendance at three trade shows in the forum state insufficient to establish personal jurisdiction).

If dissemination of product information through a website, nationally-distributed advertisements, and/or a trade show was sufficient to establish purposeful availment for every

---

[5] The court should not credit NRC's unfounded speculation that NRC will attend a future trade show in Tennessee. Dkt. 38 at 10. In any event, NRC does not plan to attend the references trade show.

state with an inhabitant who received such information, defendants would be subject to suit in every state in the United States. That would be eminently unreasonable and violate due process. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (explaining that defendants should only be subject to jurisdiction in those forums where they "should reasonably anticipate being haled into court"). The entire purpose of the purposeful availment requirement is to avoid such an outcome. *Id*. Therefore, NRC's trade show attendance also cannot suffice to create personal jurisdiction in Tennessee.

### B. NRC Has Not Sold Any Accused Products into Tennessee, Not Even Indirectly Through a "Stream of Commerce"

Recognizing that NRC lacks any direct contacts with the forum, Miller next resorts to a stream of commerce theory. In support of this theory, Miller relies on hearsay statements from one of its Vice Presidents stating that Mike Mace, owner of Mace's Heavy Duty Trucking in Memphis, Tennessee, told him that he ordered an NRC wrecker containing the accused controls from third party Robert Young's Auto & Truck located in Virginia. Dkt. 38-1 at ¶¶ 5, 6, 12.

As an initial matter, Miller cannot rely on hearsay evidence to survive a motion to dismiss. Declarations must "be made on personal knowledge, [and] set forth facts as would be admissible in evidence." *Foshee v. Forethought*, No. 09-2674, 2010 U.S. Dist. LEXIS 51296, at *8-9 (W.D. Tenn. May 7, 2010). For this reason, the Court must disregard the hearsay statements contained in the declaration.

The reason hearsay evidence is admissible is directly applicable here: hearsay is unreliable. The reality is that Mike Mace has **not** ordered, or even told Robert Young's that it intends to order, an NRC wrecker unit, much less one containing the accused controls. Ex. C ("Davis Decl.") ¶ 6. In fact, Mike Mace has not purchased a wrecker from Robert Young's in over three years. *Id*. at ¶¶ 4-6. And even if Miller's inadmissible and false hearsay evidence was

6

true and accepted, it still would not establish that a sale of an accused product occurred within the State of Tennessee.[6]  Thus, there have not been, nor are currently scheduled to be, any sales of the wreckers containing the accused controls into Tennessee.  Without this necessary predicate, Miller's stream of commerce argument fails.

Miller's stream of commerce theory fails for the additional reason that there is no stream. *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 117 (1987) ("The stream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale.") (Brennan, J.).  The mere potential for a sale in the forum state is insufficient to confer jurisdiction under even the less stringent interpretation of *Asahi*.[7]  *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 n.15, 1571 (Fed. Cir. 1994).  In *Beverly Hills Fan*, the principal case on which Miller relies, the Federal Circuit found an established distribution channel existed where the defendants' distributor had six locations in the forum state and each of them had sold commercial embodiments of the infringing products.  *Id.* at 1561.  In addition, it was undisputed that there were at least fifty-two infringing products in Virginia and that the defendant provided a warranty to forum-state consumers over each of these products.  *Id.*

The other cases Miller cites in support of its position rely on evidence of a similarly robust and established stream of sales into the forum state.  *Blitzsafe Tex., LLC v. Bayerische*

---

[6] The fictional sale would have occurred either at a trade show in Florida or Virginia (by virtue of Mace calling Robert Young's in Virginia to place an order).  Davis Decl. at ¶ 6.  Further, Miller does not consider which state's sale tax would be paid or where Mace would take possession (which would most likely be in Virginia).  *See id.*

[7] The specific requirements for establishing personal jurisdiction under the stream of commerce theory were left unresolved in *Asahi*, which set forth two theories: (1) Justice Brennan's "pure stream of commerce" theory, and (2) Justice O'Connor's "stream of commerce plus" standard. 480 U.S. at 112.  The law regarding the stream of commerce theory remains in flux, and the Federal Circuit has intentionally avoided endorsing either position.  *See, e.g.*, *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1365 (Fed. Cir. 2012).

7

*Motoren Werke AG*, No. 2:17-cv-00418, 2018 U.S. Dist. LEXIS 173065, at *5 (E.D. Tex. Sept. 5, 2018) (ongoing, continuous shipments through four dealers located inside the forum); *Agis Software Dev. V. HTC Corp.*, No. 2:17-cv-00515, 2018 U.S. Dist. LEXIS 167029, at *12-15 (E.D. Tex. Sept. 28, 2018) (defendant shipped 86 million branded phones to U.S. distributors who sold them to carriers and retailers in the forum state, and plaintiff's agent had purchased at least thirteen accused products inside the forum); *Ford Global Techs., LLC v. New World Int'l*, No. 2:15-cv-10394, 2016 U.S. Dist. LEXIS 78384, at *10 (E.D. Mich. June 16, 2016) (noting over 15,000 transactions in Michigan); *Serv. Solutions, U.S., LLC v. Autel US Inc.*, No. 13-10534, 2013 U.S. Dist. LEXIS 150036, at *11 n. 5 (E.D. Mich. October 18, 2013) (manufacturer sold accused products through national retailer with 30 retail locations inside the forum).

In contrast, "isolated" or "sporadic" shipments into the forum state are insufficient to support the exercise of personal jurisdiction. *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1365 (Fed. Cir. 2012); *see also State Indus. v. Beckett Gas, Inc.*, 200 F.R.D. 392, 396 n.3 (M.D. Tenn. 2001) (stating that where "[o]nly five water heaters . . . .ended up in Tennessee," the court had to conclude "that [the defendant] did not utilize any established distribution channels" to direct activities in the forum state and therefore exercise of personal jurisdiction was improper).  For this additional reason, Miller cannot establish personal jurisdiction over NRC.

### C.    Rule 4(k)(2) Does Not Apply to the Present Case

Finally, Miller retreats to a theory that Rule 4(k)(2) applies.  It does not.

As an initial matter, Miller misstates the conversations between counsel for Miller and NRC concerning a fundamental predicate to 4(k)(2) jurisdiction:  that the defendant not be subject to jurisdiction in a specific jurisdiction within the United States.  Miller states that "[o]n

8

the day this brief was filed, NRC informed MITE of its position that 'Rule 4(k)(2) is not implicated because NRC has already confirmed personal jurisdiction over NRC exists in the District of New Jersey.'" Dkt. 38 at 15 n. 12. In fact, NRC informed Miller that it was subject to personal jurisdiction in New Jersey during the parties' meet and confer on June 4, 2019. In correspondence later that day Miller's counsel wrote: "You then . . . . affirmatively sa[id] that you believed a New Jersey court <u>would</u> have personal jurisdiction over NRC due to the single sale that your declarant stated (and you confirmed) occurred in that state." Ex. A.[8] A few hours later, NRC's counsel confirmed that: "NRC would not contest personal jurisdiction in [New Jersey]." Ex. B. Moreover, NRC identified New Jersey as a location of where it sold the accused product in its opening brief. Dkt. 38 at 15 n. 12 (recognizing that the Pigeon Declaration, Dkt 35 ¶ 8, identified sale of at least one accused product in New Jersey). This was the reason the parties discussed the issue during the meet and confer. Because NRC is subject to personal jurisdiction in New Jersey, Rule 4(k)(2) cannot apply. *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1415 (Fed. Cir. 2009) (holding that the defendant avoids the application of Rule 4(k)(2) when it "designates a suitable forum in which the plaintiff could have brought suit").

### D. Exercising Personal Jurisdiction Over NRC is Not Fair or Reasonable

The Court need not reach the issue of fairness because Miller has clearly failed to establish specific jurisdiction. In any event, subjecting a defendant to personal jurisdiction in a state in which it has no contacts would be fundamentally unfair. This is particularly true when Miller's basis for asserting personal jurisdiction, if accepted, would subject NRC to jurisdiction

---

[8] In addition to a sale of a wrecker with the accused controls having occurred in New Jersey, NRC also has a distributor located in New Jersey. *See* http://www.battelinniswreckersales.com/ (last visited June 17, 2019).

in every state in the United States. Such a result is in direct conflict with the requirement of **purposeful** availment of the forum state. As the minimum contacts portion of the inquiry is so blatantly lacking, however, NRC will not expend further effort briefing the fairness and reasonableness factors.

## II. MILLER'S ALLEGATIONS ARE INSUFFICIENT TO SURVIVE A MOTION TO DISMISS UNDER RULE 12(b)(6)

For the reasons set forth in NRC's Opening Brief, Dkt. 34 at 14-24, Miller fails to set forth a viable claim for infringement of any of the asserted utility and design patents. It is clear from the plain language and drawings of the patents at issue that NRC does not infringe the asserted claims. No construction of any of the patents is required to conclude that Miller's claims are baseless. Therefore, the Court should dismiss Miller's patent infringement claims under Rule 12(b)(6).

### A. Miller Fails to Plausibly Allege Infringement of U.S. Patent No. 9,440,577

Miller's attempts to obfuscate the unambiguous claim language cannot take the place of affirmative allegations plausibly alleging that the accused products practice each of the limitations found in the asserted claims.

#### 1. No claim construction is required to find that NRC does not infringe claim 1

Miller incorrectly characterizes NRC's arguments in an attempt to create a claim construction dispute. But claim construction is not necessary to conclude that Miller's infringement claims are baseless.[9]

---

[9] Miller suggests NRC "does not mention" the prosecution history because it supports Miller's position. Miller is wrong. The statements by the Examiner that Miller references do not concern claim language that Miller subsequently drafted to describe its invention and that appears in the issued claims. It is the issued language that controls, and this isolated statement is not relevant to NRC's motion. And in any event, the Examiner's characterization of a potential claim

10

Miller suggests that "NRC's argument for dismissal of MITE's infringement claim as to the '577 Patent depends entirely on *NRC's* view that claim 1 of the '577 patent requires the control panel to be co-extensive with the door that closes off the compartment." Dkt. 38 at 19. NRC never argued that claim 1 requires the control panel to be coextensive with the door. *See* Dkt. 34 at 15-16. Instead, NRC's position is in line with the plain language of claim 1, which requires that the control panel be "**operable to close off the interior compartment from an operator of the wrecker controls** . . . ."[10] Dkt. 34-1 at col. 8:41-45. And NRC's accused control panel does not close off the control panel from the operator of the wrecker controls:

element—a "door 25 which supports the wrecker controls"— does not describe the accused product, which is connected to the compartment and supported by hinged support arms that are entirely separate from the door.

[10] Miller's attempt to "summarize" claim 1 is improper. Miller states that "claim 1 recites only that, so long as the interior compartment may be closed off from the operator of the vehicle in some manner when the control panel is stored in the first position, this claim element is satisfied." Dkt. 38 at 20. That is plainly **not** what claim 1 says. In addition, Miller is wrong to rely upon an alternative embodiment to support its efforts to rewrite claim 1. Dkt. 38 at 20-21. The embodiment Miller references, which includes a control panel on a horizontally sliding shelve that is wholly separate from a vertically-moving door, is not covered by claims 1 or 16. *See* Dkt. 34-1 at 5:1-4; Fig 3A (depicting a bread-box-style door (27) and horizontally moving shelf (25)). Instead, that embodiment is covered by claim 22, a claim that NRC does not assert in this action.



Dkt. 35-1; Dkt. 24-1; Dkt. 24-2 at 6.  For this reason, Miller has not and cannot plausibly allege

infringement of claim 1.[11]

### 2.      No claim construction is required to find that NRC does not infringe claim 16

As with claim 1, Miller inaccurately characterizes claim 16 to argue against NRC's

motion to dismiss.  Miller rearranges claim language to argue that "[C]laim 16 . . . does *not* recite

that *the control panel* closes off the interior compartment.  Instead, it uses the term

'comprising'—meaning 'including *but not limited to*' – '[sic] an outwardly opening door

associated with the interior compartment accessible from an exterior of the vehicle . . . .'"  Dkt.

34 at 21.  Once again, however, the claims read very differently than Miller's paraphrased and

rearranged recitations.  Claim 16 requires a "control panel comprising an outwardly-opening

door associated with the interior compartment accessible from an exterior of the vehicle."  Dkt.

34-1 at col. 10:27-33.  As Miller admits, the term "comprising" means "including but not limited

---

[11] Miller also suggests that NRC offers a "proposed claim construction" that "the control panel cannot include the door."  Dkt. 38 at 20.  NRC argues no such thing.  In fact, with respect to claim 16, NRC notes that the claims expressly require the control panel to include a door.  The reason why Miller lacks a good-faith basis to allege infringement is specifically because NRC's control panel does not include (or otherwise function as) a door.

to." Dkt. 38 at 21. Thus, plain language of claim 16 requires a control panel "including but not limited to" an outwardly-opening door.

NRC's control panel does not satisfy this requirement because—as shown above with respect to claim 1—the control panel does not include a door. Instead, the control panel and the door in the accused product are two entirely separate and discrete pieces. For this reason, Miller has not and cannot plausibly allege infringement of claim 16.

Additionally, as stated in NRC's opening brief, Dkt. 34 at 16-17, Miller fails to plausibly allege that the accused product practices each and every limitation of the claim 16 because claim 16 is a method claim. Nowhere in its pleadings or its Opposition Brief does Miller set forth a basis for concluding that NRC practices every step of the claimed method as required by law. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1317 (Fed. Cir. 2009). For this as well, Miller's pleading is deficient and should be dismissed.

### 3. Miller fails to plausibly allege infringement of any asserted claims

Miller cites a number of cases in support of its argument that it has plausibly alleged infringement. *See* Dkt. 38 at 22. But Miller does not acknowledge that its Amended Complaint does not address the elements of claims 1 and 16 on which NRC's motion to dismiss focuses. With respect to claim 1, Miller merely alleges that "the accused wrecker controls are stored in a closed-off interior compartment of the wrecker and may be extended outward to the exterior of the vehicle for operator use." Dkt. 24 at ¶ 19. Miller does not plead that the control panel closes off the compartment as required by claim 1. Meanwhile, Miller acknowledges in the Amended Complaint that it is **the door** of NRC's product, and not the control panel, that closes off the compartment. *Id*. at ¶ 15. As for claim 16, Miller does not advance any allegations concerning a

control panel comprising a door.  *Id*. at ¶¶ 21-25.  Thus, Miller's reliance on cases addressing the adequacy of factual pleadings under the *Iqbal* standard are misplaced.

Since Miller fails to plausibly allege infringement of claims 1 and 16, it also fails to plausibly allege infringement of dependent claims 2-3, 6-8, 11, 13, 17, 20, and 21.

### 4. NRC's extrinsic evidence is not required to support dismissal

Miller also argues that the Court should "summarily den[y]" NRC's motion "as procedurally improper."  Miller is wrong.

First, there is nothing procedurally improper about NRC's inclusion of exhibits in support of its motion to dismiss.  The introduction of evidence is expressly contemplated by the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 12(d).

Second, the exhibits do not go beyond the pleadings.  All three of the exhibits (two pictures and a video) are of the accused product.  Miller expressly referenced, described, and included pictures of the accused product in its original and amended complaints and exhibits. *E.g.*, Dkt. 24 at ¶¶ 4, 13-25; Ex. 1; Ex. 2 at 7.   Additional visual depictions of the same device are not, therefore, new matter and may be considered in ruling on NRC's Rule 12 motion.[12] *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (noting that if defendants were not permitted to submit additional depictions of the same device, a "plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied"); *Bailey v. City of Ann Arbor*, 860 F.3d 382, 387 (6th Cir. 2017) (considering video exhibits in support of a motion to dismiss when the exhibit showed verifiable facts contradicting the plaintiff's pleadings so as to make the plaintiff's allegations implausible).  It would be eminently unreasonable and unjust for Miller to charge a product with infringement,

---

[12] Notably, Miller does not identify anything it believes to be inaccurate in the pictures or video.

14

and yet escape the need to defend its allegations against better resolution pictures and a video of the very structure it alleges as satisfying the claims and depicts in its complaint.[13]

Finally, while it is clear the evidence is fair game, it is not necessary to consider the pictures and/or video of the accused product to rule on infringement. The pictures of the accused device included in exhibits to the complaint suffice.

**B.      Miller Fails to Plausibly Allege Infringement of the Asserted Design Patents**

As with the utility patent, Miller ignores the claims when it defends its design patent infringement claims. As NRC stated in its Opening Brief, a proper side-by-side comparison of the design patent claims and the accused controls shows that Miller cannot plausibly allege design patent infringement:

---

[13] Miller's suggestion that it "has had no opportunity to challenge or cross-examine NRC about" the viewings of the very product it accuses of infringement is problematic. *See* Dkt. 38 at 19. Its claims are baseless, and this complaint suggests Miller did not meaningfully examine the accused product before filing its infringement complaint as required by Rule 11.

15

**NRC Industries**

**D'963**



**NRC Industries**



**D752,492**



Because the designs are so plainly dissimilar, the Court should dismiss Miller's claims.

*Anderson v. Kimberly-Clark Corp.*, 570 Fed. Appx. 927, 934 (Fed. Cir. 2014); *see also OurPet's Co. v. Iris USA, Inc.*, No. 1:34-cv-1642, 2015 U.S. Dist. LEXIS 185150, at *4-5 (N.D. Ohio Mar. 23, 2015); *Cotapaxi Custom Design & Mfg., LLC v. Corporate Edge, Inc.*, No. 06-5183, 2007 U.S. Dist. LEXIS 73172, at *9 (D.N.J. Sept. 28, 2007), *aff'd* 284 Fed. Appx. 809 (Fed. Cir. 2008). Miller does not even bother to address these cases, each of which NRC cited in its opening brief as indicating that dismissal is proper in this case.

Miller identifies a few alleged commonalities between the accused and claimed designs, but they are functional, and therefore irrelevant to the infringement inquiry. Dkt. 24 at 6 (identifying the functional features of "(a) a compartment located on the side of a rotating

wrecker that houses wrecker controls; (b) a hinged door that opens outwardly; and (c) wrecker controls resting on that opened door, with the wrecker controls in an ergonomically acceptable position for allowing operating control" as commonalities between the designs). The law is clear that "the scope of a design patent claim must be limited to the ornamental aspects of the design." *Sport Dimension, Inc. v. Coleman, Co.*, 820 F.3d 1316, 1320 (Fed. Cir. 2016). As such, functional features—features that Miller's utility patent are directed to—are irrelevant. Focusing on the ornamental aspects of the two claimed designs with NRC's product, they are entirely dissimilar. Miller makes no attempt to address these aesthetic features in either its pleadings or its briefing, even though NRC specifically identified them in its opening brief. Dkt. 34 at 22-24.

In addition, Miller fails to even understand the patents it is asserting. Each of the asserted design patents expressly state that "[i]n the drawings, the broken lines depict portions of the article and a vehicle that form no part the claimed design." The entirety of the wrecker, and therefore the "ergonomically-acceptable" location of the compartment, is drawn in broken lines. Dkt. 38 at 23-24. These features are therefore not part of the claimed design. Similarly, Miller characterizes the designs of the asserted design patents as one and the same, with each of them directed to a compartment. *Id.* But the D'492 patent covers only the "console," not the compartment, and not a "hinged door that opens outwardly." *Id.* And even with respect to the D'963 patent, it does not show "wrecker controls resting on that opened door;" it shows a control panel that is fixedly attached to the door. This is yet another instance showing that Miller has not adequately investigated its claims as required by Rule 11. Meanwhile, Miller's much smaller competitor, NRC, has been forced to spend thousands of dollars defending itself against these baseless claims.

18

Additionally, Miller makes the unsupported assertion that "there are limited (if any) relevant prior art designs." Dkt. 38 at 24 (emphasis added).[14] Miller offers no evidence whatsoever to support this self-serving conclusion. Nor does this baseless statement serve to identify common ornamental features of the claimed and accused designs. Accordingly, the Court should dismiss Miller's infringement claims.

## CONCLUSION

For the reasons set forth above and in NRC's Opening Brief, NRC does not have relevant, purposeful contacts with Tennessee sufficient to support the exercise of jurisdiction. Miller has also failed to state any claim of infringement upon which relief can be granted. Accordingly, this Court must dismiss this action under both Rules 12(b)(2) and 12(b)(6).[15]

---

[14] The face of each design patent lists 8 prior art references that the examiner considered.

[15] NRC reiterates that all of the infringement claims in this case are frivolous, and this case is exceptional under 35 U.S.C. § 285. NRC intends to seek recovery of its fees following dismissal of these claims.

19

Dated: June 17, 2019

Respectfully submitted,

s/ *Todd S. Werner*
J. Derek Vandenburgh (MN # 224145)
Todd S. Werner (MN # 033019X)
Alexander S. Rinn (MN # 0395616)
CARLSON, CASPERS, VANDENBURGH & LINDQUIST, P.A.
225 South Sixth Street, Suite 4200
Minneapolis, MN 55402
Telephone: (612) 436-9600
Facsimile: (612) 436-9605
dvandenburgh@carlsoncaspers.com
twerner@carlsoncaspers.com
arinn@carlsoncaspers.com

*s/Timothy L. Mickel*
Timothy L. Mickel (TN BPR # 17486)
EVANS HARRISON HACKETT PLLC
835 Georgia Avenue, Suite 800
Chattanooga, TN 37402
Telephone: (423) 648-7890
Facsimile: (423) 648-7897
tmickel@ehhlaw.com

*Attorneys for Defendant NRC Industries*

## CERTIFICATE OF SERVICE

I do hereby certify that the foregoing document has been filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail and/or facsimile, or hand delivery. Parties may access this filing through the Court's electronic filing system.

This 17th day of June, 2019.

**EVANS HARRISON HACKETT PLLC**

*s/Timothy L. Mickel*
Timothy L. Mickel