# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| MILLER INDUSTRIES TOWING EQUIPMENT INC., | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) NO. 1:19-CV-00095 ) REEVES/LEE ) |
| NRC INDUSTRIES, | ) ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This is a patent infringement suit. Miller Industries Towing Equipment Inc. ("Miller") is alleging infringement of one utility patent and two design patents related to towing vehicles by NRC Industries ("NRC").

NRC has moved to dismiss Counts I and II of Miller's Amended Complaint under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). NRC moves to dismiss because (1) this Court lacks personal jurisdiction over NRC and (2) because Miller fails to state a claim for patent infringement upon which relief can be granted. For the reasons stated below, NRC's motion to dismiss [R. 33] under Federal Rules of Civil Procedure 12(b)(2) is GRANTED. Due to this court failing to have personal jurisdiction, NRC's argument that Miller has failed to state a claim for relief is rendered MOOT. Moreover, for the reasons enumerated below, Miller's motion for jurisdictional discovery [R. 39] is DENIED. Miller's Motion for Leave to File a Sur-Reply [R. 42] is also DENIED.

### I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

Miller owns numerous patents related to various towing recovery vehicle ("wrecker") designs and uses. Miller alleges that NRC manufactures and offers to sell wreckers containing an interior compartment that stores the wrecker controls covered by these design and utility patents. Miller further claims that NRC

1

sells the allegedly infringing wreckers through various retailers throughout the United States. According to the complaint, NRC maintains its principle office in Canada and does business in the United States.

On March 29, 2019, Miller filed their complaint seeking monetary compensation for prior infringement and injunctive relief to prevent future infringing conduct. In its complaint, Miller asserts that "[d]amages to [Miller] accruing from NRC's infringement of the Patents have occurred based on sales of the Accused Products in this judicial district and elsewhere in the United States." Miller asserts that "[t]hrough the infringing activities involving the Accused Products, NRC has infringed and continues to infringe, various claims of the Patents, including but not limited: at least Claim 1 of the '577 Patent; and the single claim encompassing the FIGURES of the '963 and '492 Patents."

NRC filed their motion to dismiss for lack of jurisdiction and for failure to state a claim on May 20, 2019. Miller responded to the motion on June 10, 2019, and NRC filed a reply on June 17, 2019. On June 10, 2019, Miller also filed a conditional motion for jurisdictional discovery. NRC responded in opposition to the motion on June 21, 2019, and Miller filed a reply on June 28, 2019. On June 24, 2019, Miller filed a motion for leave to file a sur-reply to NRC's reply to the motion to dismiss. On June 27, 2019, NRC filed a response in opposition to Miller's Motion for leave to file a sur-reply. On July 17, 2019, Miller filed a notice of filing of newly discovered jurisdictionally relevant evidence. The newly discovered evidence consists of alleged (1) evidence that NRC planned to attend the October 2019 Towing Trade Show in Chattanooga, Tennessee; and (2) evidence that the July 2019 edition of American Towman Magazine contains an advertisement for NRC's infringing controls. On September 3, 2019, NRC filed its response, and Miller filed its reply on September 5, 2019.

Miller alleges the following contacts support personal jurisdiction: NRC's maintenance of advertisements in two magazines that have Tennessee subscribers; NRC's posting of training videos to nationally accessible third-party websites, such as YouTube; NRC's maintenance of a website; NRC's participation in trade shows in which NRC marketed its products to Tennessee residents, including the infringing products; and NRC's sale to one Tennessee customer of a wrecker containing the infringing patents.

2

## II. LEGAL STANDARD

**A. Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2)**

Federal Rule of Civil Procedure 12(b)(2) provides that "lack of personal jurisdiction" is a defense to a claim for relief. Fed. R. Civ. P. 12(b)(2). The law of the Federal Circuit applies to personal jurisdiction challenges in patent infringement actions. *Grober v. Mako Products, Inc.*, 686 F.3d 1335, 1345 (Fed. Cir. 2012) (citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995)). Where the "determination is based upon the records without an evidentiary hearing, plaintiffs need only show a prima facie case for personal jurisdiction." *Grober*, 686 F.3d at 1345 (citing *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003)). In addition, "[w]hen analyzing this showing after a motion to dismiss, the district court must accept uncontroverted allegations in [the] plaintiff's complaint as true and resolve any factual conflicts in plaintiff's favor." *Grober*, 686 F.3d at 1345; *see also Elecs. For Imaging*, 340 F.3d at 1349.

"Analysis of personal jurisdiction in federal court begins with Rule 4 of the Federal Rules of Civil Procedure." *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1410 (Fed. Cir. 2009) (citing *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. de Equip. Medico*, 563 F.3d 1285, 1297 (Fed. Cir. 2009)). Rule 4(k)(1) provides that service of process establishes jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). Rule 4(k)(2), the so-called federal long-arm statute, provides that service of process establishes jurisdiction over a defendant if the claim arises under federal law, the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and exercising jurisdiction comports with due process. Fed. R. Civ. P. 4(k)(2). "Rule 4(k)(2) was adopted to provide a forum for federal claims in situations where a foreign defendant lacks substantial contacts with any single state but has sufficient contacts with the United States as a whole to satisfy due process standards and justify the application of federal law." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1293–94 (Fed. Cir. 2012) (citations omitted).

### 1. Rule 4(k)(1)

Under Rule 4(k)(1), the "[d]etermination of whether jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process." *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1017 (Fed. Cir. 2009) (internal quotation marks and citation omitted). In analyzing whether a particular state's statute is intended to reach the limit of federal due process, the Federal Circuit "defer[s] to the interpretation of a state's long-arm statute given by that state's highest court." *Touchcom*, 574 F.3d at 1409. The Tennessee Supreme Court finds that the state's long-arm statute expands the jurisdiction of Tennessee courts to the full limit permitted by the due process clause. *Gordon v. Greenview Hosp., Inc.*, 300 S.W.3d 635, 645-46 (Tenn. 2009); see also *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 477 (6th Cir. 2003). When this is the case, the Court need only determine whether the exercise of personal jurisdiction violates due process. *See Touchcom*, 574 F.3d at 1411.

Turning to the second inquiry, the United States Supreme Court has held that due process requires a defendant to have sufficient "minimum contacts with [the forum state] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks and citation omitted). The Federal Circuit has identified the following considerations as relevant for consideration of specific personal jurisdiction: "(1) whether the defendant purposefully directed its activities at residents of the forum state, (2) whether the claim arises out of or relates to the defendant's activities with the forum state, and (3) whether assertion of personal jurisdiction is reasonable and fair." *Celgard, LLC v. SK Innov. Co., Ltd.*, 792 F.3d 1373, 1377–78 (Fed. Cir. 2015) (citations omitted). If the plaintiff satisfies its burden to establish the first two elements of the due process requirement, "the burden shifts to the defendant to prove that personal jurisdiction is unreasonable." *Id.* at 1378.

### 2. Rule 4(k)(2)

As set forth above, even if this Court finds that NRC has insufficient contacts with Tennessee to support exercise of jurisdiction, jurisdiction in this Court may be appropriate under Federal Rule of Civil Procedure 4(k)(2) "as long as (1) the plaintiff's claim arises under federal law, (2) the defendant is not subject to personal jurisdiction in the courts of any state, and (3) the exercise of jurisdiction satisfies due process requirements." *Merial Ltd*, 681 F.3d at 1294. With regard to the first requirement, in *Touchcom*, the Federal Circuit held that where federal patent law creates the cause of action, the claims arise under federal law for purposes of Rule 4(k)(2). *Touchcom*, 574 F.3d at 1413 (citing 28 U.S.C. § 1338; *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 (1988)).

Turning to the second requirement of Rule 4(k)(2), the Federal Circuit adopted the approach which places the burden on the defendant to designate a suitable forum in which the suit can proceed. *Id*. at 1414–15. The Federal Circuit adopted the following explanation articulated by the Seventh Circuit: "A defendant who wants to preclude the use of Rule 4(k)(2) has only to name some other state in which the suit could proceed." *Id*. at 1414 (quoting *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001)). The Federal Circuit therefore holds that the federal court is entitled to use Rule 4(k)(2) where a defendant contends it cannot be sued in the forum state and fails to concede jurisdiction in another state. *Id*. at 1415.

### B. Jurisdictional Discovery

Miller has moved for leave to conduct jurisdictional discovery. Recognizing that whether to allow discovery is "an issue not unique to patent law," the Federal Circuit applies the law of the regional circuit in considering whether a trial court abused its discretion in granting or denying jurisdictional discovery. *Patent Rights Protection Grp., LLC v. Video Gaming Techs., Inc.*, 603 F.3d 1364, 1371 (Fed. Cir. 2010). Thus, the Sixth Circuit standard for jurisdictional discovery governs in this case. *Id.*

The Sixth Circuit recognizes that if a trial court rules on a Rule 12(b)(2) motion prior to trial "it has the discretion to adopt any of the following courses of action: (1) determine the motions based on affidavits alone; (2) permit discovery, which would aid in resolution of the motion; or (3) conduct an evidentiary

hearing on the merits of the motion." *Intera Corp. v. Henderson*, 428 F.3d 605, 614 n.7 (6th Cir. 2005) (quoting *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)).  Importantly, "the decision whether to grant discovery . . . before ruling on a 12(b)(2) motion is discretionary." *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp*, 198 F. App'x 425, 434 (6th Cir. 2006) (citation omitted)).

### C. Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

Because this court finds that it does not have personal jurisdiction over NRC, this Court will not proceed with an analysis of NRC's Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) as this argument is rendered moot.

### III. ANALYSIS

### A. Motion to Dismiss for Lack of Personal Jurisdiction

### 1.) Rule 4(K)(1)

### a.) Advertisements in National Trade Magazines

Miller avers that NRC advertised wreckers with the alleged infringing controls in the American Towman and Tow Times, both of which are national trade magazines.  Tow Times has approximately 1,127 subscribers in Tennessee, while American Towman has approximately 840 subscribers in Tennessee.

The Federal Circuit specifically addressed the issue of advertisements in national trade publications that are distributed both within and outside of the forum state. *Grober*, 686 F.3d at 1347. That court held that even where trade publications are distributed to residents of the forum state, advertisements in those publications cannot establish purposeful availment without evidence showing that the forum market was specifically targeted. *Id*

Here, there is no evidence that Tennessee was specifically targeted in these advertisements. Instead, these advertisements are targeting the entire national market. Therefore, these advertisements do not support jurisdiction.

### b.) NRC's Website

Miller argues that NRC's maintenance of its website makes Tennessee a proper venue for this dispute. This Court must first determine whether NRC's website is passive or interactive.

A passive website is insufficient to establish purposeful availment for the purpose of due process. *Maynard v. Philadelphia Cervical Collar Co.*, 18 F. App'x 814, 816–817 (Fed. Cir. 2001) (citing *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336–337, (5th Cir. 1999) (A website is passive even though it posts information regarding a company's products and services, provides the user with printable forms, and displays the company's contact information.)). However, maintenance of an interactive website might be sufficient to constitute personal jurisdiction if there is evidence that the website was purposefully directed to residents of the forum state. *Nexlearn v. Allen Interactions, Inc.*, 859 F.3d 1371, 1378–1380 (Fed. Cir. 2017).

NRC's website allows all users to use its interactive map and post content regardless of where they are located. Moreover, users do not have the ability to purchase products directly from the website. Finally, although NRC's website does contain some content related to Tennessee, this content does not rise "to a degree that reveals specifically intended interaction with residents of the state." *Id.* This Court finds that NRC's website is passive and does not support jurisdiction of NRC in Tennessee.

### c.) YouTube Videos

For similar reasons to the ones enumerated above regarding NRC's Website, NRC's use of third-party websites also fails to support jurisdiction. Like NRC's website, YouTube is a passive website that does not specifically target customers in the forum state, does not allow viewers to purchase products, and does not constitute purposeful availment. *See Maynard*, 18 F. App'x. at 816-17; *NexLearn*, 859 F.3d at 1379. Therefore, NRC's use of these websites does not support jurisdiction.

**d.) Trade Shows**

Miller argues that NRC's participation in trade shows in Baltimore, Maryland, and Orlando, Florida, supports jurisdiction because NRC advertised vehicles with the infringing controls at those events. However, a defendant's attendance at a trade show, even if in the forum state, cannot confer personal jurisdiction where the defendant has not purposefully engaged in other activities in the forum. *Medical Solutions, Inc. v. Change Surgical LLC*, 541 F.3d 1136, 1141 (Fed. Cir. 2008); *Autogenomics Inc.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009) (holding defendant's attendance at three scientific conferences/trade shows in the forum state insufficient to establish personal jurisdiction). As enumerated above and below, there are no other activities that NRC engaged in that involve Tennessee and rise to the level of conferring personal jurisdiction. Therefore, this Court also finds that participation in trade shows as alleged does not support jurisdiction.

**e.) Sale of Products to a Tennessee Resident**

As a preliminary matter, this Court acknowledges Miller initially alleged in its Response in Opposition to Defendant's Motion to Dismiss that NRC sold goods directly to Mace's Heavy Duty Towing ("Mace"), located in Memphis, Tennessee. However, when NRC denied that any sale to Mace occurred and claimed it was actually an employee of one of NRC's distributors who corresponded with Mace, Plaintiff simply responded that the distributor may have made a sale before or after the Orlando trade show. As a result, it is unclear whether Plaintiff still maintains that NRC *directly* sold products to Mace, or whether Plaintiff now concedes that Mace corresponded only with the distributor's employees at the Florida trade show. Although NRC denied that a sale to Mace occurred at all, factual discrepancies must be resolved in Miller's favor. *Grober*, 686 F.3d at 1345; *see also Elecs. for Imaging*, 340 F.3d at 1349. Therefore, for the purpose of determining whether personal jurisdiction is proper, this Court will assume that the sale to Mace did occur. Moreover, for the reasons that follow, regardless of whether this alleged sale occurred through a distributor or through NRC directly, this Court finds that one sale containing the alleged infringing patents does not provide support for jurisdiction.

Miller's argument relies on the stream of commerce theory, however, "[t]he stream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale." *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 117 (1987) (Brennan, J., concurring). Courts have often found that "isolated" or "sporadic" shipments into the forum state are insufficient to support the exercise of personal jurisdiction. *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1365 (Fed. Cir. 2012); see also *State Indus. v. Beckett Gas, Inc.*, 200 F.R.D. 392, 396 n.3 (M.D. Tenn. 2001) (holding that the exercise of jurisdiction was improper where five water heaters ended up in Tennessee).

Given that there is only one alleged sale in Tennessee, NRC's purported stream of commerce is not a "regular and anticipated flow of products." *Asahi Metal Industry Co.*, 480 U.S. at 117. Instead, it is an "isolated" shipment into the forum state and is insufficient to support the exercise of personal jurisdiction. *AFTG-TG, LLC*, 689 F.3d 1358, 1365 (Fed. Cir. 2012). As such, this Court holds that the sale of one wrecker to Mace containing the alleged infringing patents does not provide enough support for personal jurisdiction.

**2.) Rule 4(K)(2)**

As stated above, "a court is entitled to use Rule 4(k)(2) to determine whether it possesses personal jurisdiction over the defendant unless the defendant names a state in which the suit can proceed." *Touchcom*, 574 F.3d at 1414. Here, NRC named New Jersey.

Miller asserts that *Merial* requires NRC to show that every requirement of jurisdiction in the other forum is satisfied. However, Miller seems to misread *Merial*. In *Merial*, the court held a defendant could not argue it would consent to jurisdiction in another state *after it had had a default judgment rendered against it*. *Merial Ltd.*, 681 F.3d 1283, 1295 (Fed. Cir. 2012). The court focused on the "gamesmanship" that would follow such a rule: defaulting parties could simply assert consent in another jurisdiction to undo an adverse judgment against it. *Id.* This is distinguishable from the facts in the instant case. Here, there has been no adverse judgment against NRC, so it seems to not be engaging in "gamesmanship" in consenting to suit in New Jersey. Moreover, while NRC merely stated it would not contest personal jurisdiction in

9

New Jersey, its statement was a response to Miller's detailed inquiry addressing NRC would consent to personal jurisdiction in New Jersey. Thus, it seems clear that NRC's response signified that it agreed it was subject to jurisdiction in New Jersey. Consequently, this Court does not have personal jurisdiction over NRC under Rule 4(k)(2).

### B. Motion for Jurisdictional Discovery

Miller seeks jurisdictional discovery of wide-reaching information related to the alleged infringement, including information pertaining to every sale and offer for sale made by NRC and the information of all of NRC's potential customers.

This Court has broad discretion to permit or deny jurisdictional discovery. *Intera Corp.*, 428 F.3d at 614 n.7 (quoting *Serras*, 875 F.2d at 1214). Further, it is well within the Court's discretion to deny a plaintiff's request for jurisdictional discovery where, as here, the plaintiff makes only speculative allegations. *See Swagelok Co. v. Dansk Ventil & Fittings ApS*, No. 1:05 CV 2322, 2006 WL 8454625, at *1 (N.D. Ohio Mar. 9, 2006). This Court finds that Miller has only alleged jurisdictional facts in a speculative fashion, and Miller's request for jurisdictional discovery is denied.

### C. Motion for Leave to File a Sur-Reply

Miller has filed a motion for leave to file a sur-reply in opposition to the Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction filed by NRC. In its motion, Miller correctly points out that "the Federal Rules of Civil Procedure do not expressly permit the filing of surreplies." *Key v. Shelby County*, 551 F. App'x. 262, 265 (6th Cir. 2014) (citing *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 481 (6th Cir. 2003)). The Sixth Circuit has acknowledged, however, that such filings may be allowed in the appropriate circumstances. *Id.*

Miller avers that a sur-reply is proper here because NRC made new arguments in its reply brief to which Miller should be entitled to respond. This Court finds that NRC has not included new arguments in its reply brief. As such, Miller's motion for leave to file a sur-reply is denied.

## IV. CONCLUSION

Accordingly, it is hereby ORDERED that NRC's motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) is GRANTED [R. 33]. Due to this court failing to have personal jurisdiction, NRC's argument that Miller has failed to state a claim upon which relief can be granted under Rule 12(b)(6) is rendered MOOT. Moreover, Miller's motion for jurisdictional discovery [R. 39] is DENIED, and Miller's Motion for Leave to File a Sur-Reply [R. 42] is also DENIED. Finally, Miller's complaint [R. 1] against NRC is DISMISSED.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**